## ILLINOIS CENTRAL RAILROAD COMPANY v. McKENDREE.

### ERROR TO THE CIRCUIT COURT OF CARLISLE COUNTY, STATE OF KENTUCKY.

No. 13.  Submitted December 14, 1905;  Restored to docket December 18, 1906;  Resubmitted April 16, 1906.—Decided December 17, 1906.

Where plaintiff bases his claim, not on common-law principles, but solely on violation of an order of a department of the Federal Government and the certificate of the court below clearly shows that defendant by answer and on the trial asserted the unconstitutionality of the statute on which the order was based, and also the illegality of the order, a verdict for the plaintiff necessarily decides that the statute and order were constitutional and legal, and the defendant has raised a Federal question which was decided against him, and which was not imported into the record merely by the certificate, and this court has jurisdiction under § 709, Rev. Stat., to review the judgment of the state court.

Without deciding whether the Cattle Contagious Disease act of February 2, 1903, 33 Stat. 1264, is or is not unconstitutional as delegating power solely vested in Congress to the Secretary of Agriculture, that act confers no power on such secretary to make any regulations concerning intrastate commerce over which Congress has no control.

As Order of the Secretary of Agriculture, No. 107, purporting to fix a quarantine line under the Cattle Contagious Disease act applies in terms to all shipments whether interstate or intrastate it is void as an attempt to regulate intrastate commerce, notwithstanding it is the same line as that fixed for a similar purpose as to intrastate shipments by the State through which it passes.

While in a proper case Federal authorities may adopt a quarantine line adopted by a State, where the secretary makes regulations adopting it as applying to all commerce whether interstate or intrastate, and nothing on the face of the order indicates whether he would have made such an order if limited to interstate commerce, the order is not divisible and this court cannot declare that it relates solely to interstate commerce but must declare it void as an entirety.

DEFENDANT in error, plaintiff below, brought an action against the railroad company as a common carrier operating a railroad through Carlisle County, Kentucky, setting forth

that the plaintiff received certain cars of infected cattle and transported them to Arlington, Carlisle County, Kentucky, where they were unloaded July 13, 1903, and placed in stock-pens, where the cattle of the plaintiff, rightfully running loose upon the commons, could and did come in contact with the infected cattle and contracted Texas cow-fever. That the company knew or could have known, by the exercise of reasonable care, that the cattle had infectious germs when unloaded, having been brought from an infected district, in conflict with well-known quarantine laws.

A general demurrer was interposed by defendant and overruled.

After an answer of general denial the defendant filed an amended answer:

"Further answering herein, the defendant says that the claims of the plaintiff herein asserted are based upon a certain alleged act of Congress of the United States of America approved February 2, 1903, entitled 'An act to enable the Secretary of Agriculture to more effectually suppress and prevent spread of contagious and infectious diseases of live stock, and for other purposes,' which act is published and contained in volume 32, United States Statutes at Large, beginning at page 791, and also in a supplement to the United States Compiled Statutes issued in 1903, by the West Publishing Company, St. Paul, Minnesota, beginning at page 372 of said volume, and said claims are further based upon certain alleged regulations adopted and promulgated by the Secretary of Agriculture on March 13, 1903, pursuant to the authority attempted to be conferred upon him by said alleged act of Congress above mentioned, approved February 2, 1903.

"The defendant says that said act of Congress hereinbefore mentioned, and said regulations adopted by the Secretary of Agriculture, as hereinbefore stated, are each and all of them repugnant to and in contravention of the Constitution of the United States of America, and in excess of the powers of Congress and of the Secretary of Agriculture under the Con-

stitution of the United States, and they are each and all, therefore, unconstitutional and void, and under the Constitution of the United States this defendant has the right, privilege and immunity of being exempt·from the ·assertion or prosecution of any claims against it based upon or arising under such act of Congress or said regulation, or any of them, and this defendant, as permitted by section 709 of the Revised Statutes of the United States, hereby specially sets up and claims and pleads in defense of this action the right and privilege and immunity which is secured to it by the Constitution of the United States, to be exempt from all suits and prosecutions and all claims against it based upon or arising under such unconstitutional and void act of Congress and regulations adopted or promulgated by the Secretary of Agriculture."

A demurrer was filed by the plaintiff to the amended answer.

The plaintiff filed an amended petition, the affirmative allegations of which were controverted.

This amended petition sets forth:

"The plaintiff, J. U. McKendree, comes, and by leave of the court amends his petition, and says that the defendant, Illinois Central Railroad Company, on the thirteenth day of June, 1903, received one car of cattle at Grand Junction, Tennessee, to be transported to the town of Arlington, Kentucky, and on the thirteenth day of said month unloaded them in the stock pens in said town.

"That the town of Arlington is a small town, located on defendant's road in this, Carlisle County, and defendant's stockpens are located adjacent to the public highway and commons, and that Grand Junction, Tennessee, is located on defendant's road and south of the quarantine line that was established on the fourteenth day of March, 1903, by and under the existing quarantine laws, and that said quarantine line, 'beginning on the Mississippi River at the southeast corner of the State of Missouri at the western boundary of Tennessee. [Here follows a description of the quarantine line through the body of the State of Tennessee, as set forth in amendment No. 4 to B. A. I.,

Order No. 107.] And that the defendants received said cattle south of said quarantine line, and transported them north and out of a quarantine district, and south of the said quarantine line, and transported them north through the State of Tennessee into this county and State, and unloaded them in the town of Arlington, and placed them in their stock pens adjacent to the public highway and commons, where plaintiff's cows came in contact with the germ of Texas cow-fever that said cattle had on them when put in the pens as aforesaid; that said stock-pens were suffered and permitted to remain open and exposed to cattle after the removal of said cattle without disinfecting, or any other effort to protect exposed stock, and plaintiff's cows contracted Texas cow-fever from said germs produced from said cattle while in said stock-pens, to the damage of plaintiff.

"Wherefore he prays as in his original petition."

The court sustained the demurrer to the amended answer of the defendant, and upon the issue joined the case was sent to the jury. A verdict and judgment were rendered against the railroad company and in favor of the plaintiff below.

There was no dispute as to the transportation of the cattle from a point south of the quarantine line to a point north thereof, and the placing of them in pens at Arlington. The court, over the defendant's objection, submitted the case to the jury upon the questions of whether the transported cattle were infected, and, if so, whether the plaintiff's cattle contracted the disease from them while they were in the pens of the defendant company at Arlington.

The presiding judge of the Carlisle Circuit Court filed the following certificate:

"I, R. J. Bugg, sole presiding judge of the Circuit Court of Carlisle County, in the State of Kentucky, now and at the time of the trial of the above-entitled cause, do hereby certify:

"That upon the trial of said cause the defendant, Illinois Central Railroad Company, relied for its defense upon certain rights, privileges and immunities specially claimed by it under

the Constitution of the United States of America, and it insisted upon its said rights, privileges and immunities throughout the trial of said action, and in the assertion of them it claimed and contended that the various regulations and orders made and promulgated by the Secretary of Agriculture, and offered in evidence on behalf of the plaintiff herein over the objections of defendant, were unconstitutional, null and void, as being in excess of the powers conferred, or which could be conferred, by act of Congress upon the Secretary of Agriculture under the Constitution of the United States of America, and that the said act of Congress approved February 2, 1903, under which the Secretary of Agriculture assumed to promulgate said orders and regulations, was itself unconstitutional, null and void, as being in conflict with the Constitution of the United States of America and in excess of the powers conferred by it upon the Congress.

"Said defendant, Illinois Central Railroad Company, further contended throughout the trial of said cause that no right of action against it accrued to the plaintiff by reason of any of the alleged regulations or orders made or promulgated by the Secretary of Agriculture, and offered in evidence upon the trial of this action, or by reason of the alleged failure on the part of the defendant to observe or to comply with any of said regulations or orders, on the ground that the said regulations or orders did not assume or attempt to give, and that the said act of Congress did not assume or attempt to give, to the plaintiff herein, or to any other in like situation, a remedy by way of civil action against the defendant herein for its alleged breach of any of said regulations or orders made or promulgated by the Secretary of Agriculture, and throughout the trial of said action the defendant, Illinois Central Railroad Company, specially set up and claimed, even if said act of Congress and said regulations and orders were valid under the Constitution and laws of the United States, still it had a right, privilege or immunity under the said act of Congress or the said regulations or orders from any liability to the plain-

tiff, J. U. McKendree, in a civil action for damages claimed on account of its alleged breach of said regulations or orders.

"In allowing the said regulations or orders of the Secretary of Agriculture to be given in evidence before the jury and in overruling the motion of defendant to peremptorily instruct the jury to return a verdict in its favor, the Carlisle Circuit Court disallowed the various contentions made as above stated on behalf of the Illinois Central Railroad Company, and denied the claims made by it of the rights, privileges or immunities specially claimed by it as above stated, and held that the various claims made by it were not well founded in law under the Constitution and laws of the United States of America, and the claims of the plaintiff herein were established and a judgment in his favor rendered solely by reason of defendant's alleged breach of said regulations and orders."

The testimony tended to show that the cows of the plaintiff came in contact with cattle transported by the railroad company from a point south of the quarantine line set forth in the amended petition.

On March 13, 1903, the Secretary of Agriculture, acting under cover of the act of February 2, 1903, 32 Stat. 791, entitled "An act to enable the Secretary of Agriculture to more effectually suppress and prevent the spread of contagious and infectious diseases of live stock, and for other purposes," established a quarantine line from west to east throughout the United States, from California to Maryland, and forbidding the transportation of cattle from points south of the line to points north of the line, except in the manner in the said order specified.

Section 9 of the order provided: "9. Violation of these regulations is punishable by a fine of not less than one hundred dollars nor more than one thousand dollars, or by imprisonment not more than one year, or by both such fine and imprisonment."

By amendment of March 14, 1904, the Secretary of Agriculture adopted as a quarantine line a line running from west

to east in the State of Tennessee, from the south of which the cattle said to have infected those of the plaintiff were transported and placed in pens in a manner not in conformity with the order.

Mr. *J. M. Dickinson*, Mr. *Edmund F. Trabue* and Mr. *Blewett Lee*, for plaintiff in error:

Congress had no power to delegate to an executive officer, or any other officer, the right to prescribe an offense against the United States or a penalty for commission of such offense.

Congress being entrusted by the Constitution with the legislative power of the United States, must exercise, and not delegate it; if it could delegate the power, it could not confide it to an executive officer. See *Hayburn's case*, 2 Dallas, 410; *Morrill* v. *Jones*, 106 U. S. 466; *Field* v. *Clark*, 143 U. S. 649, 692; *United States* v. *Eaton*, 144 U. S. 677; *United States* v. *Waters*, 133 U. S. 208, 213; *Ex parte Kollock*, 165 U. S. 526, 538; *United States* v. *Blasingame*, 116 Fed. Rep. 654; *Dent* v. *United States*, 71 Pac. Rep. 920; *Adams* v. *Burdge*, 95 Wisconsin, 390; *King* v. *Concordia Fire Ins. Co.*, 103 N. W. Rep. 616.

If Congress had power to delegate such authority to an executive officer it must be exercised within the constitutional limits of congressional power, which in this instance is circumscribed by the limits of the authority of Congress to regulate commerce among the several States.

Assuming the power of Congress to clothe the Secretary of Agriculture with the legislative power which he assumed to exercise in the premises, and treating the Secretary's regulation as a law, the action of the Secretary in adopting a quarantine line, theretofore established by the State of Tennessee, extending through the State from west to east, and forbidding transportation from points south to points north of the line, is invalid because an attempt to regulate purely intrastate commerce. When a provision of an act of Congress in assuming to regulate commerce covers as well intrastate as interstate

commerce, the act of Congress on the two classes of commerce, being inseparable, fails *in toto.*

Where a statute is couched in terms so broad as to exceed the limits of the power of the legislature to enact it, the court will not by construction limit the statute to the scope which might constitutionally be given it by the legislature, but will hold the statute unconstitutional. *United States* v. *Reese,* 92 U. S. 214, 221; *Trade Mark Cases,* 100 U. S. 82, 98; *Allen* v. *Louisiana,* 103 U. S. 80, 85; *United States* v. *Harris,* 106 U. S. 629, 641; *Poindexter* v. *Greenhow,* 114 U. S. 270, 305; *Spreigue* v. *Thompson,* 118 U. S. 90, 94; *Baldwin* v. *Franks,* 120 U. S. 678, 685; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 565; *James* v. *Bowman,* 190 U. S. 127, 140; *United States* v. *Ju Toy,* 198 U. S. 253, 262; *United States* v. *Reese,* 92 U. S. 214, 221; *Trade Mark Cases,* 100 U. S. 82, 98, 99.

A just construction of the acts of Congress above cited under the regulations of the executive officers aforesaid enacted pursuant to such acts of Congress, if valid at all, are enforceable only through the imposition of penalties, and confer no right of private action upon any individual supposed to be injured by violation of such statutes or regulations.

No private right of action for damages supposed to have been sustained by violation of the acts or regulations is conferred by Congress. None, therefore, exists. When Congress intends private action for damages to exist it so provides, as in the interstate act. The right of action arising out of an act of Congress is a Federal right, and must be conferred by Congress or it does not exist. The courts will not imply for doing an act forbidden by act of Congress a penalty not therein provided by adjudicating the existence of a private right of action in favor of someone supposed to be injured by the act done.

The rule in the Federal courts is that where a statute changing the common law prescribes a penalty, no civil action can be maintained for doing the acts which give rise to the penalty. *Dollar Savings Bank* v. *United States,* 19 Wall. 227, 238;

*Haycraft* v. *United States,* 22 Wall. 81, 98; *Pollard* v. *Bailey,* 20 Wall. 520, 527; *Farmers' Nat. Bank* v. *Dearing,* 91 U. S. 29, 35; *Barnet* v. *Nat. Bank,* 98 U. S. 555; *Stephens* v. *Monongahela Bank,* 111 U. S. 197; *Carter* v. *Carusi,* 112 U. S. 478, 483; *McBrown* v. *Scottish Investment Co.,* 153 U. S. 318, 325; *Central Stock Yards* v. *L. & N. R. Co.,* 112 Fed. Rep. 823, 826.

*The Attorney General* and *The Solicitor General* for the United States, at the suggestion of the court, there being no brief filed for defendant in error:

Under the decisions of this court the alleged Federal question referred to in the certificate was not raised in the court below at the proper time and in the proper way. *Speer* v. *Illinois,* 123 U. S. 181; *Lawler* v. *Walker,* 14 How. 152; *Brooks* v. *Missouri,* 124 U. S. 394; *Leeper* v. *Texas,* 139 U. S. 467; *Powell* v. *Brunswick County,* 150 U. S. 439; *Dibble* v. *Bellingham Bay Land Co.,* 163 U. S. 69; *Yazoo and Mississippi Railroad Co.* v. *Adams,* 180 U. S. 41; *Chapin* v. *Fye,* 179 U. S. 127.

Defendant's alleged right, under the act of February 2, 1903, to be exempt from a civil action by an individual for special damages occasioned him by a violation of the regulations of the Secretary of Agriculture made in pursuance thereof, is frivolous and fictitious, and made solely for the purpose of obtaining a review by this court of the constitutional questions involved. *Hamblin* v. *Western Land Co.,* 147 U. S. 531, 533.

A real, not a fictitious, Federal question is essential to the jurisdiction of this court over the judgments of state courts. *Millingar* v. *Hartupee,* 6 Wall. 258; *New Orleans* v. *New Orleans Water Works Co.,* 142 U. S. 79, 87.

The act of February 2, 1903, so far as it is necessary to be considered, is constitutional and valid. It gives specific authority to the Secretary of Agriculture to do as he did in B. A. I. order, No. 107, dated March 13, 1903, namely, designate an area within the United States which he believed to

be infected, and make. rules and regulations concerning the
transportation of cattle therefrom in interstate or foreign
commerce.

This is no unconstitutional delegation of authority. In
furtherance of the clearly expressed purpose of the act, that
the spread of contagious and infectious diseases of live stock
should be effectually suppressed, Congress authorized the
Secretary of Agriculture to make rules and regulations con-
cerning the transportation in interstate and foreign com-
merce of live stock coming from places within the United
States which he believed to be infected, and declared that
such rules and regulations should have the force of law. In
necessary effect this was a prohibition upon the transportation
in interstate or foreign commerce of cattle coming from such
infected areas, except in accordance with the rules and regu-
lations prescribed by the Secretary.

The power conferred upon the Secretary to make such rules
and regulations is only administrative. *Buttfield* v. *Stranahan,*
192 U. S. 470, which sustained an act of Congress forbidding,
in broad terms, the importation of tea inferior in purity,
quality, and fitness for consumption to the standards au-
thorized to be fixed by the Secretary of the Treasury.

The regulations of the Secretary of Agriculture, being con-
fined to the subject of interstate commerce, were constitu-
tional and valid.

It is immaterial whether a quarantine line established by.
Congress or under its authority for the regulation of interstate
commerce runs through the center of a State, so long as inter-
state transportation is alone intended to be affected. In
order adequately to police and protect interstate commerce
Congress may regulate and control intrastate commerce going
through the channels of interstate commerce. That question
is not, however, presented in this case, since § 1 of the act of
Congress only directed the Secretary of Agriculture to make
rules and regulations covering the transportation in interstate
commerce and foreign commerce of live stock coming from

infected areas, and the regulations, properly construed, are also limited to interstate transportation.

In the original order of March 13, 1903, the quarantine line established by the Secretary was confined to state boundaries, hence interstate commerce alone was regulated thereby.

By necessary implication the rules and regulations prescribed by the order in question were intended to apply, in case the quarantine line should be changed so as to run through a State, only to interstate commerce, as in the case of the original line. This was the practical interpretation put upon said order and its amendments by the Department. In the present case the cattle in question were brought from Grand Junction, Tennessee, a point below the quarantine line, to Arlington, in Kentucky, and hence were being transported in interstate commerce.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

The Government objects to the jurisdiction of this court to entertain the writ of error, upon the ground that no Federal question is raised within the intent and meaning of section 709 of the Revised Statutes. But we are of opinion that such questions were raised, and that we are required upon this record to review the judgment of the state court.

An inspection of the record shows that the case as made by the plaintiff below upon the amended petition was to recover damages for the infection of his cattle, because of coming in contact with cattle transported by the railroad company from a point south to a point north of the quarantine line established by the Secretary of Agriculture in a manner violative of regulations for the transportation and keeping of cattle established by the Secretary's order.

It was not an action to recover for negligence upon common-law principles. The complaint was amended in such form as to count upon the supposed right of action accruing to the

plaintiff because of the violation of the department's order. The demurrer of the plaintiff to the answer of the railroad company, setting forth the unconstitutionality of the law and the action of the Secretary thereunder, was sustained.

The certificate of the court below is given as to the extent and character of the Federal rights and immunities claimed by the defendant, and clearly states that the defendant alleged the unconstitutionality of the statute and order, that the order was in excess of the power given the Secretary, and that the statute gave no remedy in damages.

The court left the case to the jury under instructions to find a verdict for the plaintiff if it had been shown that the plaintiff's cattle were infected by coming in contact with those transported by the railroad company. It therefore necessarily decided that the act was constitutional and gave a right to recover damages for breach of the requirements of the Secretary made in pursuance thereof, and that the Secretary's order was not in excess of the statutory power given. The amended complaint, as we have said, counted upon the liability in this form. The traverse of the amended complaint made the issue. The certificate did not originate the Federal question. "It is elementary that the certificate of a court of last resort may not import a Federal question into a record where otherwise such a question does not arise; it is equally elementary that such a certificate may serve to elucidate the determination whether a Federal question exists." *Rector* v. *City Deposit Bank,* 200 U. S. 405, 412; *Marvin* v. *Trout,* 199 U. S. 212, 223.

This case comes within the principle decided in *Nutt* v. *Knut,* 200 U. S. 12, in which the court said:

"A party who insists that a judgment cannot be rendered against him consistently with the statutes of the United States may be fairly held, within the meaning of section 709, to assert a right and immunity under such statutes, although the statutes may not give the party himself a personal or affirmative right that could be enforced by direct suit against his ad-

versary. Such has been the view taken in many cases where the authority of this court to review the final judgment of the state courts was involved. *Logan County Nat. Bank* v. *Townsend*, 139 U. S. 67; *Railroads* v. *Richmond*, 15 Wall. 3; *Swope* v. *Leffingwell*, 105 U. S. 3; *Anderson* v. *Carkins*, 135 U. S. 483, 486; *McNulta* v. *Lochridge*, 141 U. S. 327; *Metropolitan Nat. Bank* v. *Claggett*, 141 U. S. 520; *McCormick* v. *Market Nat. Bank*, 165 U. S. 538, 546; *California Nat. Bank* v. *Kennedy*, 167 U. S. 362."

To the same effect is *Rector* v. *City Deposit Bank*, 200 U. S. *supra*.

Upon this record, read in the light of the certificate, we think the defendant raised Federal questions as to the constitutionality of the law, and, if constitutional, whether the Secretary's order was with the power therein conferred, and the right to a personal action for damages in such manner as to give this court jurisdiction of them under section 709, Rev. Stat.

The railroad company, by the proceedings and judgment in this case, was denied the alleged Federal rights and immunities specially set up in the proceedings, in the enforcement of a statute and departmental orders averred to be beyond the constitutional power of Congress and the authority of the Secretary of Agriculture, and in the rendition of a judgment for damages in an action under the statute and order, in opposition to the insistence of the defendant that, even if constitutional, the statute did not confer such power or authorize a judgment for damages.

The constitutional objections urged to the validity of the statute of February 2, 1903, and the Secretary's order, No. 107, purporting to be made under authority of the statute, raise questions of far-reaching importance as to the power of Congress to authorize the head of an executive department of the Government to make orders of this character, alleged to be an attempted delegation of the legislative power solely vested by the Constitution in Congress. These questions, it is suggested by the counsel for the Government, have become

academic by reason of the passage of the later act of March 3, 1905, to enable the Secretary of Agriculture to establish and maintain quarantine districts, to permit and regulate the movement of cattle and other live stock therefrom, and for other purposes. 33 Stat. 1264, U. S. Comp. Stat., 1901, Supplement of 1905, p. 617.

But we are of opinion that it is unnecessary to determine them in this case. We think the defendant was right in the contention that, if the act of February 2, 1903, was constitutional, and rightfully conferred the power upon the Secretary of Agriculture to make orders and regulations concerning interstate commerce, there was no power conferred upon the Secretary to make regulations concerning *intra*state commerce, over which Congress has no control, and concerning which we do not think this act, if it could be otherwise sustained, intended to confer power upon him. Assuming, then, for this purpose, that the Secretary was legally authorized to make orders and regulations concerning interstate commerce, we find that on March 13, 1903, he adopted, in the Order number 107, the following regulation:

"2. Whenever any State or Territory located above or below said quarantine line, as above designated, shall duly establish a different quarantine line, and obtain the necessary legislation to enforce said last-mentioned line strictly and completely within the boundaries of said State or Territory, and said last above-mentioned line and the measures taken to enforce it are satisfactory to the Secretary of Agriculture, he may, by a special order, temporarily adopt said State or Territory line.

"Said adoption will apply only to that portion of said line specified, and may cease at any time the Secretary may deem it best for the interests involved, and in no instance shall said modification exist longer than the period specified in said special order; and, at the expiration of such time, said quarantine line shall revert, without further order, to the line first above described.

"Whenever any State or Territory shall establish a quarantine line, for above purposes, differently located from the above described line, and shall obtain by legislation the necessary laws to enforce the same completely and strictly, and shall desire a modification of the Federal quarantine line to agree with such State or Territory line, the proper authorities of such State or Territory shall forward to the Secretary of Agriculture a true map or description of such line and a copy of the laws for enforcement of the same, duly authenticated and certified."

And afterward, on March 14, 1903, the Secretary adopted the quarantine line agreed to be established by the State of Tennessee, and said to run about the middle of the State, and from the south of which the cattle in this case were transported, and provided:

"And whereas said quarantine line, as above set forth, is satisfactory to this Department, and legislation has been enacted by the State of Tennessee to enforce said quarantine line, therefore the above line is adopted for the State of Tennessee by this Department for the period beginning with the date of this order and ending December 31, 1903, in lieu of the quarantine line described in the order of March 13, 1903, for said area, unless otherwise ordered."

The terms of Order 107 apply to all cattle transported from the south of this line to parts of the United States north thereof. It would, therefore, include cattle transported within the State of Tennessee from the south of the line as well as those from outside that State; there is no exception in the order, and in terms it includes all cattle transported from the south of the line, whether within or without the State of Tennessee. It is urged by the Government that it was not the intention of the Secretary to make provision for intrastate commerce, as the recital of the order shows an intention to adopt the state line, when the State by its legislature has passed the necessary laws to enforce the same completely and strictly. But the order in terms applies alike to inter-

state and intrastate commerce. A party prosecuted for violating this order would be within its terms if the cattle were brought from the south of the line to a point north of the line within the State of Tennessee. It is true the Secretary recites that legislation has been passed by the State of Tennessee to enforce the quarantine line, but he does not limit the order to interstate commerce coming from the south of the line, and, as we have said, the order in terms covers it. We do not say that the state line might not be adopted in a proper case, in the exercise of Federal authority, if limited in its effect to interstate commerce coming from below the line, but that is not the present order, and we must deal with it as we find it. Nor have we the power to so limit the Secretary's order as to make it apply only to interstate commerce, which it is urged is all that is here involved. For aught that appears upon the face of the order, the Secretary intended it to apply to all commerce, and whether he would have made such an order, if strictly limited to interstate commerce, we have no means of knowing. The order is in terms single, and indivisible. In *United States* v. *Reese,* 92 U. S. 214, 221, upon this subject, this court said:

"We are, therefore, directly called upon to decide whether a penal statute enacted by Congress, with its limited powers, which is in general language broad enough to cover wrongful acts without as well as within the constitutional jurisdiction, can be limited by judicial construction so as to make it operate only on that which Congress may rightfully prohibit and punish. For this purpose we must take these sections of the statute as they are. We are not able to reject a part which is unconstitutional and retain the remainder, because it is not possible to separate that which is unconstitutional, if there be any such, from that which is not. The proposed effect is not to be attained by striking out or disregarding words that are in the section, but by inserting those that are not now there. Each of the sections must stand as a whole, or fall altogether. The language is plain. There is no room for construction,

unless it be as to the effect of the Constitution. The question, then, to be determined is, whether we can introduce words of limitation into a penal statute so as to make it specific, when, as expressed, it is general only."

And the court declined to make such limitation.

And in *Trade-Mark cases*, 100 U. S. 82, 99, the court said:

"If we should, in the case before us, undertake to make by judicial construction a law which Congress did not make, it is quite probable we should do what, if the matter were now before that body, it would be unwilling to do, namely, make a trade-mark law which is only partial in its operation, and which would complicate the rights which parties would hold, in some instances under the act of Congress, and in others under state law. Cooley, Const. Lim., 178, 179; *Commonwealth* v. *Hitchings*, 5 Gray (Mass.), 482."

And see *United States* v. *Ju Toy*, 198 U. S. 253, 262, 263.

We think these principles apply to the case at bar, and that this order of the Secretary, undertaking to make a stringent regulation with highly penal consequences, is single in character, and includes commerce wholly within the State, thereby exceeding any authority which Congress intended to confer upon him by the act in question, if the same is a valid enactment. We, therefore, find it unnecessary to pass upon the other questions which were thought to be involved in the case at bar.

The judgment of the state court will be

*Reversed and the cause remanded to it for further proceedings not inconsistent with this opinion.*

MR. JUSTICE MCKENNA concurs in the result.