# HYDE v. SOUTHERN RAILWAY COMPANY.

CONSTITUTIONAL LAW; STATUTES; EMPLOYERS' LIABILITY ACT; CARRIERS; DEATH BY WRONGFUL ACT.

1. The power of Congress in the District of Columbia is plenary, and extends to the regulation of all commerce of whatsoever nature that may be carried on within its boundaries.

2. The condition of severableness of the provisions of a statute, that may preserve the validity of one, notwithstanding the repugnance of the other to the Constitution, is not dependent upon the fact that they may be found in separate sections; but it is sufficient if the separation can be accomplished by excising a clause of the same section and leaving the remainder complete and unchanged in meaning without reading into it another word.

3 The fact that the act of Congress of June 11, 1906 (34 Stat. at L. 232, chap. 3073, U. S. Comp. Stat. Supp. 1907, p. 891), commonly known as the "employers' liability act," is unconstitutional in so far as it relates to carriers engaged in business in the States, because it applies to all employees whether engaged or not in interstate commerce at the time of injury, does not render it unconstitutional so far as it relates to the District of Columbia; and, its provisions being severable, and it being the duty of Congress to legislate generally for the benefit of inhabitants of the District of Columbia, there is no reason to doubt that Congress would have enacted the act with the unconstitutional provisions eliminated. The act, therefore, is valid and operative, in so far as it applies to all employees of common carriers in the District of Columbia, without regard to the character of the commerce engaged in.

4. In conferring a right of action where none existed at common law, Congress can couple the grant with any condition it may deem reasonable in a particular case, and is not bound to affix the same condition to similar grants.

5. Section 1301, D. C. Code (31 Stat. at L. 1394, chap. 854), allowing recovery of damages for death caused by wrongful act, and limiting the recovery in such cases to $10,000, is not repealed by the act of Congress of June 11, 1906 (34 Stat. at L. 232, chap. 3073, U. S. Comp. Stat. Supp. 1907, p. 891) commonly known as the "employers' lia-

bility act," which gives a right of action against carriers to their employees for all damages resulting from negligence of the officers, agents, or employees of such carriers; but each act applies to cases arising under it, and to none other; so that the recovery under the last-named act is not limited to the sum named in the first act.

No. 1890.  Submitted May 5, 1908.  Decided June 2, 1908.

HEARING on an appeal, specially allowed, from an order of the Supreme Court of the District of Columbia sustaining a demurrer to certain counts of a declaration filed by the appellee to recover damages for personal injuries.     *Reversed.*

The COURT in the opinion stated the facts as follows:

1. The question involved in this appeal is the constitutionality of the act of Congress approved June 11, 1906, commonly known as the "employers' liability act," as applied to the District of Columbia.  It comes before us on a special appeal granted from an order of the court below sustaining a demurrer to the first four counts of a declaration filed by Christiana Hyde, as administratrix of the estate of Richard Hyde, deceased, against the Southern Railway Company, to recover damages, laid at $20,000 in each count, for the death of intestate as the result of an act of negligence of the defendant.

In the event that the act be sustained, another question arises on the amount of damages laid in the several counts of the declaration, which is, whether the amount of recovery under said act is subject to the control of sec. 1301, D. C. Code [31 Stat. at L. 1394, chap. 854], which limits all recoveries of damages for injuries resulting in death from wrongful act, neglect, or default of any person or corporation, to $10,000.

*Mr. Henry H. Glassie* for the appellant.

*Mr. George E. Hamilton, Mr. John W. Yerkes, Mr. M. J. Colbert,* and *Mr. John J. Hamilton* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the court:

2. The primary question is as to the validity of the said act, entitled: "An Act Relating to Liability of Common Carriers in the District of Columbia and Territories and Common Carriers engaged in Commerce between the States and between the States and Foreign Nations to Their Employees." Section 1, which is the only one necessary to be recited, reads as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That every common carrier engaged in trade or commerce in the District of Columbia, or in any Territory of the United States, or between the several States, or between any Territory and another, or between any Territory or Territories and any State or States, or the District of Columbia, or with foreign nations, or between the District of Columbia and any State or States or foreign nations, shall be liable to any of its employees, or, in the case of his death, to his personal representative, for the benefit of his widow and children, if any, if none, then for his parents, if none, then for his next of kin dependent upon him, for all damages which may result from the negligence of any of its officers, agents, or employees, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, ways, or works." [34 Stat. at L. 232, chap. 3073, U. S. Comp. Stat. Supp. 1907, p. 891.]

The Supreme Court of the United States has recently held this act to be repugnant to the Constitution in so far as it extends to injuries received, in a State, by employees of a railway company engaged in interstate commerce. *Employers' Liability Cases (Howard* v. *Illinois C. R. Co.)* 207 U. S. 463, 52 L. ed. —, 28 Sup. Ct. Rep. 141. In the opinion of the court it was said by Mr. Justice White: "The act, then, being addressed to all common carriers engaged in interstate commerce, and imposing a liability upon them in favor of any of their employees, without qualification or restriction as to the business in which the carriers or their employees may be engaged at the time of

the injury, of necessity includes subjects wholly outside of the power of Congress to regulate commerce.   *   *   *   So far as the face of the statute is concerned, the argument is this,—that, because the statute says carriers engaged in commerce between the States, etc., therefore, the act should be interpreted as being exclusively applicable to the interstate-commerce business and none other of such carriers, and that the words 'any employee,' as found in the statute, should be held to mean any employee when such employee is engaged only in interstate commerce. But this would require us to write into the statute words of limitation and restriction not found in it. But, if we could bring ourselves to modify the statute by writing in the words suggested, the result would be to restrict the operation of the act as to the District of Columbia and the Territories. We say this because immediately preceding the provision of the act concerning carriers engaged in commerce between the States and Territories is a clause making it applicable to 'every common carrier engaged in trade or commerce in the District of Columbia or in any Territory of the United States.' It follows, therefore, that common carriers in such Territories, even although not engaged in interstate commerce, are, by the act, made liable to 'any' of their employees, as therein defined. The legislative power of Congress over the District of Columbia and the Territories being plenary, and not depending upon the interstate-commerce clause, it results that the provision as to the District of Columbia and the Territories, if standing alone, would not be questioned. Thus it would come to pass, if we could bring ourselves to modify the statute by writing in the words suggested,—that is, by causing the act to read 'any employee when engaged in interstate commerce,'—we would restrict the act as to the District of Columbia and the Territories, and thus destroy it in an important particular. To write into the act the qualifying words, therefore, would be but adding to its provisions in order to save it in one aspect, and thereby to destroy it in another; that is, to destroy in order to save and to save in order to destroy. The principles of construction invoked are undoubted, but are inapplicable. Of course, if it can be lawfully done, our duty is

to construe the statute so as to render it constitutional. But this does not imply, if the text of an act is unambiguous, that it may be rewritten to accomplish that purpose. Equally clear is it, generally speaking, that, where a statute contains provisions which are constitutional and others which are not, effect may be given to the legal provisions by separating them from the illegal. But this applies only to a case where the provisions are separable and not dependent one upon the other, and does not support the contention that that which is indivisible may be divided. Moreover, even in a case where legal provisions may be severed from those which are illegal, in order to save, the rule applies only where it is plain that Congress would have enacted the legislation with the unconstitutional provisions eliminated. All these principles are so clearly settled as not to be open to controversy. They were all, after a full review of the authorities, restated and reapplied in a recent case. *Illinois C. R. Co.* v. *McKendree,* 203 U. S. 514, 51 L. ed. 298, 27 Sup. Ct. Rep. 153, and authorities there cited."

Necessarily all that was actually decided in that case was that, in so far as the act relates to carriers engaged in business in the States, it is repugnant to the Constitution in that it applies to all employees whether engaged or not in interstate commerce at the time of injury; and that it cannot be restricted, by construction, to employees engaged in interstate commerce alone, in order to save its constitutionality. We have inserted the lengthy extract from the opinion in that case not only to show the grounds on which the decision rests, but also because some of the language quoted is relied on by both parties in this case in support of their respective contentions. As said therein, the power of Congress in the District of Columbia is plenary, and extends to the regulation of all commerce of whatsoever nature that may be carried on within its boundaries; and the act expressly applies to all employees of common carriers in said District without regard to the character of the commerce engaged in. If, therefore, the operation of the act had been confined by its terms to the District of Columbia and the Territories, there could be no doubt of its constitutionality. This power cannot be exercised

in a State, but is restricted to the regulation of commerce among the several States.

Congress having undertaken to exercise plenary power in the one act, as it has been interpreted, not only in the District of Columbia and the Territories, where it has been conferred, but also in the States, where it has not, the question for our determination is whether the provisions of the same, as they relate to the respective jurisdictions, are separable and not dependent upon each other, so that one may stand notwithstanding the invalidity of the other. The rule in this regard is well settled, as we have seen; the difficulty lies in its application.

This condition of severableness of the provisions of a statute, that may preserve the validity of one notwithstanding the repugnance of the other to the Constitution, is not dependent upon the fact that they may be found in separate sections, though this would ordinarily render the task of separation easier. It is sufficient if the separation can be accomplished by exercising a clause of the same section, and leaving the remainder complete and unchanged in meaning without reading into it another word. *Penniman's Case* (*Vial* v. *Penniman*) 103 U. S. 714, 717, 26 L. ed. 602, 604; *Diamond Glue Co.* v. *United States Glue Co.* 187 U. S. 611, 617, 47 L. ed. 328, 333, 23 Sup. Ct. Rep. 206; *Florida C. R. Co.* v. *Schutte,* 103 U. S. 118, 142, 26 L. ed. 327, 335.

We think it is evident from the language of the title and the first clauses of sec. 1 of the act that, in its enactment, Congress contemplated the exercise of its plenary power in the District of Columbia and the Territories, and of only its limited power in the States. This general intention, as regards the latter, was thwarted by the use of language, appropriate to the exercise of its plenary power, but not to the exercise of its limited power, making the common carrier, who might also be engaged in interstate commerce, liable to "any of its employees," without discrimination in respect of the character of the business in the conduct of which the injury might occur. We do not think, however, that the purpose to make the new rule of law, defining the relations of master and servant, apply to "every common

carrier engaged in trade or commerce in the District of Columbia, or in any Territory of the United States," is made abortive by the next clause making it apply also to common carriers engaged in commerce among the several States. This second clause or provision can be eliminated without impairing the particular effect or changing the meaning of the first in any particular. Striking out the second clause, the section would read as follows: "That every common carrier engaged in trade or commerce in the District of Columbia, or in any Territory of the United States, * * * shall be liable to any of its employees, or, in case of his death, to his personal representative, for the benefit of his widow and children, if any, if none, then for his parents, if none, then for his next of kin dependent upon him, for all damages which may result from the negligence of any of its officers, agents, or employees, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, ways, or works." [34 Stat. at L. 232, chap. 3073, U. S. Comp. Stat. Supp. 1907, p. 891.] As thus read, the section is perfect and complete without the addition of a new word, or the slightest change in the meaning of one that has been used. The situation is quite different from that presented in the case of *United States* v. *Reese,* 92 U. S. 214, 221, 23 L. ed. 563, 565, where it was said that the proposed effect was sought to be maintained, not by striking out or disregarding words that are in the section, but by inserting words not now there. The same difference exists between the conditions of this case and those of the case chiefly relied on by the appellees. *Illinois C. R. Co.* v. *McKendree,* 203 U. S. 514, 529, 51 L. ed. 298, 304, 27 Sup. Ct. Rep. 153.

3. The provisions of the section being deemed severable, the next question is, whether it is plain that Congress would have enacted the act with the unconstitutional provision eliminated? We see no reason to doubt that it would have done so. One of the special duties of Congress is to legislate generally for the benefit of the inhabitants of the District of Columbia and the Territories. That duty in respect of the adequate protection of the employees of common carriers engaged in trade or com-

merce therein is in no wise dependent upon its performance in respect of the limited class of employees subject to its jurisdiction in the several States. The latter may be, and are in great measure, protected by State legislation. They have another power to appeal to for their relief, while those in the District of Columbia have not. No apparent reason appears why Congress would not have extended this relief to them, unless coupled with the relief which it sought ineffectively to extend to others. Lifting the burden of the rule of the common law from all employees of carriers in the District and Territories adds nothing to that borne by the second class of employees in the several States that have not yet undertaken their relief. That the performance of its duty to all employees of carriers in the District of Columbia, and the Territories, exclusively within its power, was first in mind, is indicated by the fact that they are first mentioned in the act, with comprehension of all such employees in whatever character of trade or commerce their employers may be engaged.

4. The amount of damages to be recovered in cases arising under the act is not limited in amount, and those alleged in the four counts of the declaration, to which the demurrer was sustained, amount to $20,000. It remains, therefore, to consider whether the amount of the recovery is limited by the operation of sec. 1301, D. C. Code [31 Stat. at L. 1394, chap. 854]. That section confers the right of action for all injuries done or happening within the limits of the District of Columbia, resulting in death, when caused by the wrongful act, neglect, or default of any person or corporation, when, if death had not ensued, the party injured would have been entitled to an action. "Such damages shall be assessed with reference to the injury resulting from such act, neglect, or default causing such death, to the widow and next of kin of such deceased person: *Provided,* That in no case shall the recovery under this act exceed the sum of $10,000." Section 1302 requires the action to be brought by and in the name of the personal representative of such deceased person, and within one year after the death of the party injured. Section 1303 provides that the damages recovered shall not be

appropriated to the payment of the debts of the deceased, but shall inure to the benefit of his or her family, and shall be distributed according to the provisions of the statute of distribution. The employer's liability act creates a new cause of action for the benefit of employees of a common carrier engaged in trade or commerce in the District of Columbia and the Territories, and, in case of their death, for the benefit, first, of widows and children, if any, second, of parents, and, if none, lastly, of next of kin dependent upon the deceased; and makes the employer liable for *"all damages* which may result from the negligence of any of its officers, agents, or employees," etc. Section 2 provides that contributory negligence shall not bar a recovery where the same was slight and the negligence of the employer was gross in comparison; "but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." Section 3 provides that no contract of employment, insurance, relief benefit, or indemnity for injury or death, entered into by or on behalf of any employee, nor the acceptance of any such insurance, relief benefit, or indemnity by the person entitled thereto, shall constitute any bar or defense to an action brought to recover damages for personal injuries to, or death of, such employee: Provided, however, that, upon the trial of such action, the defendant may set off any sum it has contributed toward any such insurance, relief benefit, or indemnity that may have been paid to the injured employee, or, in case of his death, to his personal representative. Section 4 limits the right of action to one year.

We do not think the question raised on the operativeness of these two statutes is whether the elder is repealed by the later, which it certainly is not, but whether the later is to be governed by the terms of the elder in respect of the limitation of the amount of damages that may be recovered.

The objects of the two are different. The first remedies a defect in the common law by conferring a right of action in all cases of injuries resulting in death, when, had the injured party survived, he would be entitled to an action, and in no other. The second changes the common law in relation to master and

servant, by giving the latter a right of action for *all damages* for injuries occasioned by the negligent acts of fellow servants, and modifies the law as to the contributory negligence of the injured person. It then extends this right of action, in case of death, to the personal representative of the deceased. The damages so recovered are distributed in a different manner from that provided in the earlier law, and are not expressly discharged of the debts or liabilities of the deceased as therein provided. The third section relates to employment contracts, insurance, relief benefits, etc., not mentioned in the Code, and provides a measure of set-off growing out of the same. Moreover, the act operates alike in the several Territories, where it does not appear that there is any statute limiting the amount of recovery.

Notwithstanding the invidious distinction made between the beneficiaries of the separate statutes in respect of the amount of the recovery, we see no reason why they may not stand together and operate according to their terms in cases coming under them respectively. In conferring a right of action where none existed at common law, Congress can couple the grant with any condition it may deem reasonable in the particular case, and is not bound to affix the same condition to all similar grants. Instead of intending to bring the parties to actions created by the act under the operation of sec. 1301 of the Code, we think that the intention was to give it operation according to its terms. It makes complete provision for all of its purposes, and leaves nothing to be supplied by the provisions of the Code. Each is to be construed, therefore, as applying to cases arising under it, and to none other.

For the reasons given, we think it was error to sustain the demurrer, and the order will, therefore, be reversed with costs, and the cause remanded for further proceedings not inconsistent with this opinion.                    *Reversed.*