OREGON R. & NAVIGATION CO. v. CAMPBELL et al.

(Circuit Court, D. Oregon. February 21, 1910.)

No. 3,308.

1. PLEADING (§ 8*)—CONCLUSIONS.

In a suit by a railroad company to enjoin the enforcement of a state railroad commission order fixing rates to be charged, an allegation that the class rates undertaken to be established by such pretended order by its terms applies to all the freight mentioned in the second paragraph of the amended complaint, to wit, freight from Portland to points in Oregon east of The Dalles originating from points out of the state, etc., was but a conclusion; since whether such rates so apply depends on whether the freight specified constitutes interstate or intrastate commerce.

[Ed. Note.—For other cases, see Pleading, Dec. Dig. § 8.*]

2. CARRIERS (§ 10*)—FREIGHT RATES—REGULATION—STATE COMMISSION—ORDERS.

An order of a state railroad commission regulating freight rates should be interpreted to apply only to intrastate commerce, under the rule that a statute should be so construed as to render it not subject to an objection that would be fatal to its validity, if possible.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 10.*]

3. CARRIERS (§ 18*)—FREIGHT RATES—REGULATION—INTERSTATE OR INTRASTATE COMMERCE.

Whether certain character of freight constitutes intrastate commerce, and is therefore subject to rates prescribed by a state railroad commission, or is interstate commerce, and therefore not so subject, should be settled in a proceeding with reference to a particular shipment of a particular commodity as it arises, and not by a suit to have the commission's order set aside as beyond its jurisdiction.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 18.*]

In Equity. Suit by the Oregon Railroad & Navigation Company against Thomas K. Campbell and others. On demurrer to amended bill for preliminary injunction. Sustained.

See, also, 173 Fed. 957.

W. W. Cotton, for complainant.

A. M. Crawford and Teal, Minor & Winfree, for defendants.

WOLVERTON, District Judge. The complainant now files an amendment to its bill of complaint, to which the defendants have interposed a demurrer. By the second paragraph it is alleged:

"That of the freight carried, and which will hereafter be carried, from Portland to points on your orator's lines in Oregon east of The Dalles under the class rates established and fixed by tariff No. L—525, at least 40 per cent. thereof originates out of the state of Oregon, has been, is, and will be shipped from Portland to points on your orator's lines east of The Dalles in the same packages in which it was originally shipped from the point of origin outside of the state of Oregon to Portland, and without coming to rest within the state of Oregon, and without becoming part of the traffic of the state of Oregon, and at least 20 per cent. of the freight carried, and which will hereafter be carried, from Portland on your orator's lines in Oregon east of The Dalles under the class rates established and fixed by tariff No. L—525 is, has been, and will be shipped from Portland to points on your orator's lines in Oregon east of The Dalles by carriers and persons bringing the same to Portland from points without the state of Oregon with the intention of immediately

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and without delay shipping the same over the lines of your orator from Portland to points in Oregon east of The Dalles, and that the same has been, is, and will be so brought into the state of Oregon, and so immediately shipped over the lines of your orator from Portland to points in Oregon east of The Dalles, and that the class rates undertaken to be established by the said pretended order of the said Railroad Commission of Oregon by its terms applies to all of the freight mentioned in this amendment."

The purpose of the paragraph is to show that by the order the State Railroad Commission has exceeded its powers, and has undertaken to regulate the rates of freight upon the transportation of interstate as well as intrastate commerce. The last clause above quoted, "And that the class rates undertaken to be established by the said pretended order of the said Railroad Commission of Oregon by its terms applies to all of the freight mentioned in this amendment," is but a conclusion. Whether the rates prescribed so apply depends upon whether the freight specified falls within the category of interstate or intrastate commerce. If within the former, the order as I have heretofore interpreted it applies. If within the latter, it does not.

This brings the discussion back again to the proper interpretation of the order. I have heretofore interpreted the rate there fixed as applying, and intended by the State Railroad Commission to apply, to intrastate traffic only. The interpretation given by the Supreme Court to the employer's liability act (Act June 11, 1906, c. 3073, 34 Stat. 232 [U. S. Comp. St. Supp. 1909, p. 1148]) in The Employers' Liability Cases, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297, and that given to an order of the Secretary of Agriculture fixing a quarantine line running east and west dividing the state of Tennessee for the protection of stock from infectious diseases in Illinois Central Railroad v. McKendree, 203 U. S. 514, 27 Sup. Ct. 153, 51 L. Ed. 298, it is argued, is opposed to the interpretation given the present order. I am unable, however, to concur in that view. In each of those cases the language employed, in the former by the act and in the latter by the order, is so broad as to include by all reasonable intendment all commerce, whether state or interstate. So it was held that the act in the one case was unconstitutional, and the order in the other beyond the authority of the Secretary of Agriculture to make.

While the order here is possibly susceptible of two constructions, yet, under the rule that a statute should be upheld against an objection that it is inimical to the Constitution wherever it can be done without doing violence to the terms of the act, it seems it should be sustained. The interpretation of the order, though not a statute, should be governed by the rule. Such was the application of it in the case last cited. The rule is clearly stated and reaffirmed in El Paso & N. R. Co. v. Gutierrez, 215 U. S. 87, 30 Sup. Ct. 21, 54 L. Ed. ——, which contains a further interpretation of the employer's liability act, upholding it in part.

The order here requires the complainant to cease and desist from charging any higher rates within the state for the transportation of merchandise and other commodities from the city of Portland to points on the defendant (complainant here) company's main, branch, leased, or otherwise controlled railroad lines within the state of Oregon. This

clause was incorrectly quoted in the main opinion as reading "between the city of Portland," etc. When we say from the city of Portland, it is reasonable to suppose that the commission intended to cover commerce originating in Portland, and thus the order is even strengthened above the form as quoted in the main opinion.

This is not a case involving a divisibility of the statute or order, so that one part of it may stand and the other fall. Nor does the order here require the reading of any words into it, so as to make it operative within the state only. The order is single, as its true intendment was, and is to affect such traffic as originates within the state, or is property local to the state, and is carried to other points in the state, or, to be more exact, as originates in Portland, or is local thereto, and is carried from Portland to points upon the complainant's lines east of The Dalles. The pleadings in the case before the commission, and its findings, as well as the order itself, all seem to indicate this, and hence the authorities cited in complainant's written brief do not apply.

I see nothing in the further argument or in the cases cited to disturb the view which I formerly entertained of the order. Paragraph 3 of the amended complaint is practically a reiteration of what was contained in the original bill by pleading a conclusion that the rates undertaken to be prescribed by the State Railroad Commission are unjust and unreasonable for the services contemplated to be performed. Hence the amendment could not be sustained, if the original bill could not.

It still does not seem to me that this is the proper proceeding in which to determine the question, attempted to be presented, as to whether goods shipped into Portland from outside the state in original packages, and sooner or later shipped out again to the interior of the state in the same unbroken packages, would constitute interstate commerce. This might depend upon how the goods were treated and considered while in Portland, or upon other conditions that are not made to appear either by the original bill or by the amendment. If the order be valid, as it is held to be, then all shipments or commerce which are intrastate in character must be controlled by the order; all that are not are not affected by it. If question arises as to any particular shipment or any particular commodity to be moved, or in process of transportation, it might be settled by carrying the matter to the commission; or, if the commission unlawfully exacts the state rate upon interstate traffic, I see no reason why it may not be enjoined in any court of competent jurisdiction. These special cases must necessarily be determined as they arise, as it is impossible, by a general decree, to determine in advance what specific commodities and the transportation thereof constitute interstate and what intrastate commerce.

The demurrer to the amended bill will be sustained, and the suit dismissed.