Mr. Justice SWAYNE
 

 delivered the opinion of the court.
 

 The plaintiff brought an action to recover back certain taxes upon its business and -income,'which it had paid to
 
 *441
 
 the defendant upó,n compulsión and under protest. The de fendant- demurred to the plaintiff’s, complaint. Upon the. argumeht of the demurrer,; the opinions ,of the judges of ■the Circuit Court were' opposed upon seven questions, which are set forth in 'the record. According to the view which -we .take of the ease, it will be sufficient to answer two of them. They ¿over the entire grounds of the controversy between the parties, and their determination will be conclusive.-
 

 They are the first and the sixth. The first is:
 

 “ WhéthCr that portion of the ninth-(9th) section of the- act of Congress, approved July 18,'1866, entitled‘An act to, reduce internal taxation,’andto amend an- áct? entitled * An act tb provide internal revenue tosúpport,the government, to pay interest on the public debt; and for bther purposes,’ approved June 80th,'. 1864; and acts amendatory thereof, whiph provides as follows, to wit:
 

 - ‘That it shall be the .duty of all persons required to make returns or ■ lists of income, and articles or objects charged with an. internal tax, to' declare in suóh returns or lists whether the .several rates and amounts' therein contained, are stated, according tp their values in legal-tender currency, or Recording to their values iu coined money ;'alid in case of neglect or refusal so to declare, to- the satisfaction of the assistant assessor receiving such returns or lists, such assistant assessor is hereby required to make returns or lists- for such .persons -neglecting or refusing, as in cases of persons neglecting or refusing to'make the returns or lists required by (he a.ets aforesaid, and to assess the duty thereon, .and to add thereto' the amount -of penalties imposed by law in cases, of such neglect or refusal- And whenever the rates and amounts contained, in'the returns or lists as aforesaid, shall be stated in coined money, it shall be the duty of. each assessor, receiving the same, to reduce such rates and amounts to their equivalent in legal tender cur-' renoy, according to the value of sueh coined money in said currency, for the time cover'ed by said returns. And -the' lists required by law to be furnished to collectors, by assessors, shall, in all cases, contain the several amounts of taxes or duties assessed, estimated or valued in legal tender currency only’—
 

 is to be construed as merely providing a rulo as to the currency in which accounts-, returns, and lists are to be stated, with a view to uniformity in'keeping t he accounts of in ternal revenue
 
 *442
 
 or whether it is to be construed as denying to a person who has received, in coined money, incomes or other moneys subject to tax or duty, the right to return the amount thereof in the currency in which it was actually received, and to pay the tax or duty thereon in legal tender currency, and be construed to require that the difference between cóined money and legal tender currency shall be added to his return, when made in coined money, and that he shall pay the tax or duty upon the amount thus increased.”
 

 We think there can be no doubt as to the proper solution of this question.. A brief analysis of the provisions of the statute which bear upon the subject, will be sufficient to maintain the conclusion at which we have arrived.
 

 1. The person making the return is required to declare whether the amounts set forth in it'are stated according to their value in legal tender currency or in coined money.
 

 2. If he fail to do so, he is subjected to a penalty, and the assessor is required to make the returns for him.
 

 3. The list, with all the amounts therein stated, according to their values in legal tender currency, is to be placed by the assessor in the hands of the collector.
 

 4. The collector is charged with the aggregate amount, and credited with his collections and otherwise,' as is provided by the statute.
 

 5. The taxes are made a lien, and, in default of payment, property is to be seized and sold by the collector. Both personal and real estate are1 liable. Full directions are given for the conduct of the proceedings.
 

 'The meaning of the statute, examined by its own light, is so clear that argument or illustration is unnecessary. It was the object of Congress to provide a uniform basis of taxation, in order to secure uniformity in the burdens imposed. “ Equality is equity.” According to the theory of the plain lift', it had a right to have 'the assessment made upon the amounts received in coin, and to pay in currency, while others, whose receipts were in currency, were to be taxed Upon that basis, and to pay in the same medium as the plaintiff. Such a result would be subversive of the
 
 *443
 
 plainest principles of reason and justice. It cannot be supposed that such was the intention of those who framed the' law. Certainly nothing in its lau'guage would warrant the construction contended for.
 

 Where, the power of taxation, exercised by Congress, is warranted by the Constitution-, as to mode and subject, it is, necessarily, unlimited in its nature. Congress may prescribe the basis, fix the rates, and require payment as it may;deem proper. Within the limits of the' Constitution ,it is supreme in its action. No power of supervision or 'control is lodged in either of the other departments of the government.
 

 To this question it must be answered, that the statute
 
 did.
 
 deny to the plaintiff the right to have the ássessment made - otherwise than as it was made by the assessor; and that it required the plaintiff' to pay the amount of the taxes set forth in the list delivered by the assessor to the collector, and which was paid. by the plaintiff, under protest, as appears •by the record. ,
 

 II. The sixth questio'n is:
 

 :i Whether the taxes páid by the plaintiff, and sought to be recovered back in this action, are not
 
 direct
 
 taxes, within the ' meaning of ijhe Constitution of the United States.”
 

 In considering this subject, it is proper to advert to the several, pro visions of the Constitution relating to taxation by Congress.
 

 “ Eepresentatives shall be apportioned among the several States which shall'be included in this Union, according to their respective numbers,” &e.
 
 *
 

 “ Congress shall have power to lay and collect taxes, duties, imposts, and excises, to pay the debts gnd provide for the common defence and, general welfare of the United States; but all duties, imposts, and excises shall be uniform throughout the United Stateg.”
 
 †
 

 “No capitation or other direct tax shall be laid, unless in pro
 
 *444
 
 portion to the census of enumeration hereinbefore directed to be taken/
 

 “io tax or duty shall be laid On articles exported from any State/’
 
 *
 

 • These clauses contain the entire grant of the taxing power by the organic law, with the limitations which that instru- ■ mept irpposes.
 

 The national government, though supreme within its own sphere, is one of limited jurisdiction and specific functions. It has no faculties but 'such as the Constitution has given it, either expressly or incidentally by necessary intendment. Whenever any act done under its authority is challenged, the proper sanction must be found in its charter, or the act is
 
 ultra vires
 
 and void. This test must be applied in the examination of the question before us. If the tax to which it refers, is a “ direct tax,” it is clear that it has not been laid in conformity to the requirements of the Constitution. It is therefore necessary to ascertain to which of the categories, named in the eighth section of the first article, it belongs.
 

 What are
 
 direct
 
 taxes, was elaborately argued and considered. by this court in
 
 Hylton
 
 v.
 
 United
 
 States,
 
 †
 
 decided in the year-1796. One of the members of the court, Justice Wilson, had been a distinguished member of the Convention which framed the Constitution. It was unanimously held, by the four justices who heard the argument, that a tax upon carriages, kept by the owner for his own use, was nót a
 
 direct tax.
 
 Justice Chase said:
 

 “I am inclined to think, but of this I do not give a judicial opinion, that the direct taxes contemplated by the Constitution are only two, to wit: a capitation or poll tax simply, without regard to property, profession, or any other circumstance, and á tax on land.”
 

 Patterson, Justice, followed in the same line of remark. He said:
 

 “ I never entertained a, doubt that the princijpal, I will net
 
 *445
 
 say the only, object the framers of the Constitution contemplated as falling within the rule of apportionment, was a capitation tax and a tax on land.....The Constitution declares that a capitation tax is a direct tax; and both in theory and practice a tax on land is deemed to be a direct tax. In this way the terms ‘ direct1 taxes,’ and ‘ capitation and other direct tax,’ are satisfied.”
 

 The views expressed in this case are adopted by Chancellor Kent and Justice Story, in their examination of the subject.
 
 *
 

 Duties
 
 are defined by Tomlin to be things due and recoverable by law. The term, in its widest signification, is hardly less comprehensive than “ taxes.” It is applied, in its most restricted meaning, to customs; and iu that sense is nearly the synonym of “ imposts.”
 
 †
 

 Impost
 
 is a duty on imported goods and merchandise. In a larger sense, it is any tax or imposition.
 
 ‡
 
 Cowell says it is distinguished from custom, “because custom is rather the 'profit which the prince makes on goods shipped out.”
 
 §
 
 Mr. Madison considered the terms “duties” and “imposts” in these clauses as synonymous.
 
 ǁ
 
 Judge Tucker thought “they were probably intended to comprehend every species of tax or contribution not included under the ordinary terms, £ taxes and excises.’ ”
 

 Excise
 
 is defined to be an inland imposition, sometimes upon the consumption of the commodity, and sometimes upon the retail sale; sometimes upon the manufacturer, and sometimes upon the vendor.
 
 ¶
 

 
 *446
 
 The taxing power is given in the most comprehensive terms. The only limitations 'imposed are: That
 
 direct
 
 taxes, including the capitation tax, shall be apportioned; that duties, imposts, and excises shall be uniform; and that no duties shall be imposed upon articles exported from any State. With these exceptions, the exercise of the power is, in all respects, unfettered.
 

 If a tax upon carriages, kept for bis own use by the owner, is not a direct tax, we can see no ground upon which a tax upon the business of an insurance company can be held to belong to that class of revenue charges.
 

 It has been held that Congress may require direct taxes to be laid and collected in the Territories as well as in the States.
 
 *
 

 The consequences which would follow the apportionment of the tax in question among the States and Territories of the Union, in the manner prescribed by the Constitution, must not be overlooked. They are very obvious. ' Where such corporations are numerous and rich, it might be light; where none exist, it could not be collected; where they are few and poor, it would fall upon them with such weight as to. involve annihilation. It cannot be supposed that the framers of the Constitution intended that any tax should be apportioned, the collection of which on that principle would be -attended with such results. The consequences are fatal to the proposition.
 

 To the question under consideration it must be answered, that the tax to which it relates is not a direct tax, but a duty or excise; that it was obligatory on the plaintiff* to pay it.
 

 The other questions certified up, are deemed to be sufficiently answered by the answers given to the first and sixth questions.
 

 Answers .accordingly.
 

 *
 

 Art. 1, § 2.
 

 †
 

 Ib. 1,
 
 §
 
 8.
 

 *
 

 Art. 1, § 9.
 

 †
 

 3 Dallas, 171.
 

 *
 

 1 Kent’s commentary, 267; Story on the Constitution, 670. See, also, Rawle on the Constitution, 8; The Federalist, No. 34; and Tucker’s Blackstone, Appendix, 294.
 

 †
 

 Tomlin’s Law Dictionary, title “Duty;” 1 Story on the Constitution, § 952; Hylton
 
 v.
 
 United States, 3 Dallas, 171.
 

 ‡
 

 Story’s Const. Abr., § 474.
 

 §
 

 Cowell’s Interpreter, title “ Impost.”
 

 ǁ
 

 1 Story’s Constitution, 669, note.
 

 ¶
 

 Bateman’s Excise Law, 96; 1 Story’s Constitution, § 953; 1 Blackstone's Commentary, 318; 1 Tucker’s Blackstone, Appendix, 341
 

 *
 

 Loughborough
 
 v.
 
 Blake, 5 Wheaton, 317.