### KELLY v. LEWELLYN, Collector of Internal Revenue.

(District Court, W. D. Pennsylvania.   May Term, 1921.)

#### No. 418.

Internal revenue ☞45—Collection of double tax, imposed under Prohibition Act, cannot be enjoined.

> The provision of National Prohibition Act, tit. 2, § 35, for the assessment of a double tax against any person responsible for the illegal manufacture or sale of liquor, is within the taxing power of Congress, and the imposition made thereunder is a tax, the collection of which, under Rev. St. § 3224 (Comp. St. § 5947), cannot be enjoined.

In Equity. Suit by Joseph A. Kelly against C. G. Lewellyn, Collector of Internal Revenue. On motion to dismiss bill. Motion granted. See, also, 274 Fed. 112.

Van A. Barrickman, of Pittsburgh, Pa., for plaintiff.
The United States Attorney, for defendant.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

THOMSON, District Judge. This bill seeks to restrain the collector of internal revenue from collecting a certain tax and penalty assessed against the plaintiff, under the provisions of section 35 of title 2 of the Volstead Act (41 Stat. 317), passed to enforce the Eighteenth Amendment to the Constitution. The bill denies the sale of any intoxicating liquors, and alleges that the defendant had no notice of the levy or assessment of the tax and penalty; that he filed with the collector an affidavit to that effect, and asked abatement of the tax and penalty, which request was refused, and payment in full demanded, and that otherwise his property would be seized and sold; that said assessment and levy is without warrant of law; and that he is entitled to injunctive relief. The government moves to dismiss the bill, on the ground that the bill is without equity, that the plaintiff has an adequate legal remedy, and that the court is without jurisdiction.

If the amount assessed is a tax, within the taxing power of Congress, its collection cannot be enjoined, by reason of section 3224 of the Revised Statutes (Comp. St. § 5947), which provides that—

"No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

This act has been given the broadest application by the Supreme Court. In State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663, the Supreme Court says:

"The government of the United States has provided, both in the customs and in the internal revenue, a complete system of corrective justice in regard to all taxes imposed by the general government, which in both branches is founded upon the idea of appeals within the executive departments. If the party aggrieved does not obtain satisfaction in this mode, there are provisions for recovering the tax after it has been paid, by suit against the collecting officer. But there is no place in this system for an application to a court of justice until after the money is paid."

To the same effect is Snyder v. Marks, 109 U. S. 189, 3 Sup. Ct. 157, 27 L. Ed. 901, wherein Justice Blatchford, delivering the opinion of the court, said:

"The inhibition of section 3224 applies to all assessments of taxes, made under color of their offices, by internal revenue officers charged with general jurisdiction of the subject of assessing taxes against tobacco manufacturers. The remedy of a suit to recover back the tax after it is paid is provided by statute, and a suit to restrain its collection is forbidden. The remedy so given is exclusive, and no other remedy can be substituted for it."

In Dodge v. Osborn, Commissioner of Internal Revenue, 240 U. S. 118, 36 Sup. Ct. 275, 60 L. Ed. 557, a bill was filed to enjoin the assessment and collection of certain surtaxes, on the ground that the statute was void, as repugnant to the Constitution of the United States. Chief Justice White, in sustaining the motion to dismiss, said:

"This doctrine has been repeatedly applied until it is no longer open to question that a suit may not be brought to enjoin the assessment or collection of a tax because of the alleged unconstitutionality of the statute imposing it"
—citing Shelton v. Platt, 139 U. S. 591, 11 Sup. Ct. 646, 35 L. Ed. 273; Pittsburgh Railway v. Board of Public Works, 172 U. S. 32, 19 Sup. Ct. 90, 43 L. Ed. 354; Pacific Whaling Co. v. U. S., 187 U. S. 447, 23 Sup. Ct. 154, 47 L. Ed. 253.

The ultimate question in the construction of section 35 is whether the double tax or penalty, or either of them, imposed therein, is in fact a tax such as Congress, acting within its constitutional authority to levy excise taxes, has power to impose. This is an important question, involving in its solution certain fundamental propositions. These may be summarized as follows:

First. The taxing powers granted to the federal government in the Constitution are:

"To lay and collect taxes, dues, imposts and excises, to pay the debt and provide for the common defense and general welfare of the United States."

Second. The power of Congress to tax, as given in the Constitution, has only one exception and two qualifications. Congress cannot tax exports, and it must impose direct taxes by the rule of apportionment, and indirect taxes by the rule of uniformity.

"Thus limited, and thus only, it reaches every subject, and may be exercised at discretion." License Tax Cases, 5 Wall. 462, 18 L. Ed. 497.

"Congress may prescribe the basis, fix the rates, and require payment as it may deem proper. Within the limits of the Constitution it is supreme in its action. No power of supervision or control is lodged in either of the other departments of the government." Pacific Mutual Ins. Co. v. Soule, 7 Wall. 433, 19 L. Ed. 95.

Third. Where the right of taxation exists, if its exercise is within the lawful power of Congress, it is absolutely unlimited in its nature, carrying with it the power to embarrass and even destroy. Courts cannot inquire into the wisdom or justice of such exercise of constitutional power. Courts can put no limitations upon such exercise of power. The right to tax, being a constitutional grant, is limited by that instrument alone, and it is within the authority of Congress to select the objects upon which an excise tax shall be laid." Pacific Ins. Co. v. Soule, supra; Austin v. Boston, 7 Wall. 694, 19 L. Ed. 224; Spencer v. Merchant, 125 U. S. 345, 8 Sup. Ct. 921, 31 L. Ed. 763; Treat v. White, 181 U. S. 264, 21 Sup. Ct. 611, 45 L. Ed. 853; Patton v. Brady, 184 U. S. 608, 22 Sup. Ct. 493, 46 L. Ed. 713; McCray v. United States, 195 U. S. 27, 24 Sup. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561. In this last case Chief Justice White, in an elaborate opinion, discusses the subject and collects the authorities. He there said:

"No instance is afforded from the foundation of the government where an act, which was within a power conferred, was declared to be repugnant to the Constitution, because it appeared to the judicial mind that the particular exertion of constitutional power was either unwise or unjust."

Fourth. The power conferred by the Constitution to levy taxes uniform throughout the United States must necessarily be exercised at the discretion of Congress, and, as was said in United States v. Doremus, 249 U. S. 86, 39 Sup. Ct. 214, 63 L. Ed. 493:

"Where the provisions of the law enacted have some reasonable relation to this power, the fact that they may have been impelled by a motive, or may accomplish a purpose, other than the raising of revenue, cannot invalidate them; nor can the fact that they affect the conduct of a business which is subject to regulation by the state police power."

Long before the passage of the Eighteenth Amendment, where a business such as the manufacture and the sale of intoxicating liquors, which was within the exclusive powers of the state to regulate, was absolutely prohibited by a state, an indictment was sustained against a person for carrying on the business in the prohibited territory without paying the special tax imposed by the internal revenue. The Supreme Court, in License Tax Cases, supra, held that, whether it was named as a license or a tax, the holder obtained no authority thereunder to carry on such business; the requirement of paying for licenses being merely a form of special taxation. It was argued with great force that it must necessarily be inferred that revenue was intended to be raised only when and where the business taxed is a lawful occupation; that Congress cannot constitutionally punish for a refusal to pay for a license to commit a crime, or constitutionally levy a tax for the privilege of committing it. But the Supreme Court held that there is nothing hostile or contradictory in the acts of Congress to the state authorities; that the license or tax demanded gave no authority to exercise trade or carry on business within the state. If the business lawfully existed there, this was a convenient mode of imposing taxes on such business, and the license could only be regarded as a receipt for such taxes, and that what the state prohibits, Congress, if the business exists notwithstanding the prohibition, discourages by taxation. It thus resulted that, in those states where prohibition existed, unlawful sales of liquor became the basis for the collection of revenue taxes.

If Congress can thus impose taxes for the carrying on of a business prohibited by the laws of the state, on the ground that the unlawful business is thereby discouraged, may not Congress, on the same ground and for the same reason, impose taxes on the unlawful carrying on of a business prohibited by the national Constitution, and the act of Congress passed for its enforcement? Turning attention particularly to the provisions of the Volstead Act, it will be observed that under section 2 certain powers and duties are vested in the Commissioner of Internal Revenue and his assistants, to investigate and report violations of the act to the United States attorney, swear out warrants before certain officers for the arrest of offenders, and aid in the committing trial to have them held for the grand jury. Under section 28 the Commissioner and other officers of the United States are vested with power and protection in the enforcement of the provisions of the act. Under section 35 of the act, which is here directly involved, the existing laws in harmony with the Volstead Act remain unimpaired. Under the Eighteenth Amendment and the act in question, intoxicating liquors may still be manufactured, sold, transported, delivered, and possessed for nonbeverage purposes. The prohibition is directed only against their production and sale as a beverage. In the section in question, Congress has specifically declared that—

"This act shall not relieve any one from paying any taxes and other charges imposed upon the manufacture or traffic in such liquor."

Lest a so-called license or tax should be misconstrued as a veiled permission by Congress to violate the law, it was then provided:

"No liquor revenue stamps or tax receipts for any illegal manufacture or sale shall be issued in advance, but upon evidence of such illegal manufacture or sale a tax shall be assessed against, and collected from, the person responsible for such illegal manufacture or sale, in double the amount now provided by law"

—with the additional penalty therein provided. It is further provided:

"The payment of such tax or penalty shall give no right to engage in the manufacture or sale of such liquor, or relieve any one from criminal liability, nor shall this relieve any person from any liability, civil or criminal, heretofore or hereafter incurred under existing laws."

I cannot doubt, under the authorities, that such imposition of a tax is within the lawful power of Congress to impose, and, if so, the courts may not inquire either as to the wisdom or justice of the imposition. The fact that, for a violation of the act, both a civil and criminal liability results, in no way affects the validity of the act. It is true that such assessment cannot be made, except upon "evidence" of such illegal manufacture or sale. But this must be assumed to be such evidence as satisfies the assessing power, and not evidence received in the course of legal procedure. In no case under the revenue laws, are the courts resorted to, to establish in the first instance the amount of revenue tax assessable. This is determined by the taxing power, and is so far conclusive against the taxpayer that his only remedy is an action to recover it back after payment has been made, if the assessment was illegal.

I find nothing in the act that makes the tax imposed here an exception to this rule. Judge Faris, in the Eastern District of Missouri, in the case of Kausch v. Moore, Collector (D. C.) 268 Fed. 668, has held that the penalty imposed by section 35 is not in fact a tax, as distinguished from the double tax eo nomine therein imposed. This position has much force and may be true. But here, as in that case, the duty of the plaintiff at least was to pay all such sums as are in section 35 specifically denominated "taxes." If these were illegally assessed, he could have paid them under protest and recovered them back.

As payment or tender of all taxes demandable is a condition precedent to an application for injunctive relief, the bill must be dismissed.