WILLIAMS, COMMISSIONER OF FINANCE, ET AL.
*v.* STANDARD OIL COMPANY OF LOUISIANA.

SAME *v.* THE TEXAS COMPANY.

Nos. 64 and 65. Argued November 23, 1928.—Decided January 2, 1929.

*Messrs. Charles T. Cates, Jr.,* and *James J. Lynch,* with whom *Messrs. L. D. Smith,* Attorney General of Tennessee, and *H. N. Leech* were on the briefs, for appellants.

Messrs. *John W. Davis* and *H. Dent Minor* for appellee in No. 64.

*Mr. John B. Keeble,* with whom *Messrs. Harry T. Klein* and *C. B. Ames* were on the brief, for appellee in No. 65.

Mr. Justice Sutherland delivered the opinion of the Court.

These cases were considered together by the court below and are submitted together here. In both the validity of a statute of Tennessee is assailed as contravening the Federal Constitution. Appellee in No. 64 is a corporation organized under the laws of Louisiana, and appellee in No. 65 is a corporation organized under the laws of Delaware. From a time long prior to the passage of the statute, both have been engaged and are now engaged in the business of selling gasoline in the State of Tennessee.

The statute was adopted in 1927. Its purpose and effect are to fix prices at which gasoline may be sold within the state. A Division of Motors and Motor Fuels is created in the Department of Finance and Taxation and authorized to collect and record data concerning the manufacture and sale of gasoline, freight rates, differentials in price to wholesalers and retailers, the cost and expense of production and sale, etc. The information thus collected is made available for use by the Commissioner of Finance and Taxation in the regulation of prices at which gasoline may be sold in the state. Permits for such sale are to be issued subject to the approval of the commissioner but only at the prices fixed and determined. Prices of gasoline are to be fixed with a proper differential between the wholesale and retail price. Rebates, price concessions and price discrimination between persons or localities are forbidden. The prices first are to be stated by the applicant for a permit, and if not approved by the superintendent of the division are to be determined by that official, with a right of review by the commissioner and finally by the courts. Ch. 22. Public Acts Tennessee 1927, p. 53. By a general statute, Shannon's Tennessee Code, § 6437, a violation of the act is a misdemeanor and is punishable by fine and imprisonment. *Pressly* v. *State,* 114 Tenn. 534, 538.

Appellees brought separate suits in the court below to enjoin the state officers named as appellants from carrying out their intention to enforce the act and institute criminal proceedings for violations of it against appellees, respectively, and to have the act declared unconstitutional and void. Under the facts alleged, the suits were properly brought. *Terrace* v. *Thompson,* 263 U. S. 197, 214; *Tyson & Brother* v. *Banton,* 273 U. S. 418, 427–428.

The principal ground of attack, and the only one we need to consider here, is that the legislature is without power to authorize agencies of the state to fix prices at which gasoline may be sold in the state, because the effect will be to deprive the vendors of such gasoline of their property without due process of law in violation of the Fourteenth Amendment. Appellees applied for a temporary injunction against appellants, upon which there was a hearing, and the court below, consisting of three judges (§ 266 Jud. Code), granted the injunction as prayed. 24 F. (2d) 455, *sub nom. Standard Oil Co.* v. *Hall.*

It is settled by recent decisions of this Court that a state legislature is without constitutional power to fix prices at which commodities may be sold, services rendered, or property used, unless the business or property involved is "affected with a public interest." *Wolff Co.* v. *Industrial Court,* 262 U. S. 522; *Tyson & Brother* v. *Banton, supra; Fairmont Co.* v. *Minnesota,* 274 U. S. 1; *Ribnik* v. *McBride,* 277 U. S. 350. Nothing is gained by reiterating the statement that the phrase is indefinite. By repeated decisions of this Court, beginning with *Munn* v. *Illinois,* 94 U. S. 113, that phrase, however it may be characterized, has become the established test by which the legislative power to fix prices of commodities, use of property, or services, must be measured. As applied in particular instances, its meaning may be considered both from an affirmative and a negative point of view. Affirmatively, it means that a business or property, in order to

be affected with a public interest, must be such or be so employed as to justify the conclusion that it has been *devoted* to a public use and its use thereby in effect *granted* to the public. *Tyson & Brother* v. *Banton, supra,* p. 434. Negatively, it does not mean that a business is affected with a public interest merely because it is large or because the public are warranted in having a feeling of concern in respect of its maintenance. *Id.,* p. 430. The meaning and application of the phrase are examined at length in the *Tyson* case, and we see no reason for restating what is there said.

In support of the act under review it is urged that gasoline is of widespread use; that enormous quantities of it are sold in the State of Tennessee; and that it has become necessary and indispensable in carrying on commercial and other activities within the state. But we are here concerned with the character of the business, not with its size or the extent to which the commodity is used. Gasoline is one of the ordinary commodities of trade, differing, so far as the question here is affected, in no essential respect from a great variety of other articles commonly bought and sold by merchants and private dealers in the country. The decisions referred to above make it perfectly clear that the business of dealing in such articles, irrespective of its extent, does not come within the phrase "affected with a public interest." Those decisions control the present case.

There is nothing in the point that the act in question may be justified on the ground that the sale of gasoline in Tennessee is monopolized by appellees, or by either of them, because, objections to the materiality of the contention aside, an inspection of the pleadings and of the affidavits submitted to the lower court discloses an utter failure to show the existence of such monopoly.

Nor need we stop to consider the further contention that appellees being foreign corporations, may not carry on

their business within the state except by complying with the conditions prescribed by the state. While that is the general rule, a well-settled limitation upon it is that the state may not impose conditions which require the re-- linquishment of rights guaranteed by the Federal Constitution. *Frost Trucking Co.* v. *R. R. Comm'n.*, 271 U. S. 583, 593, *et seq.*, where the applicable decisions of this Court are reviewed.

Finally, it is said that even if the price-fixing provisions be held invalid other provisions of the act should be upheld as separate and distinct. This contention is emphasized by a reference to § 12 of the act, which declares: " That if any section or provision of this Act shall be held to be invalid this shall not affect the validity of other sections or provisions hereof."

In *Hill* v. *Wallace*, 259 U. S. 44, 71, it is said that such a legislative declaration serves to assure the courts that separate sections or provisions of a partly invalid act may be properly sustained " without hesitation or doubt as to whether they would have been adopted, even if the legislature had been advised of the invalidity of part." But the general rule is that the unobjectionable part of a statute cannot be held separable unless it appears that, " standing alone, legal effect can be given to it and that the legislature intended the provision to stand, in case others included in the act and held bad should fall." The question is one of interpretation and of legislative intent, and the legislative declaration " provides a rule of construction which may sometimes aid in determining that intent. But it is an aid merely; not an inexorable command." *Dorchy* v. *Kansas*, 264 U. S. 286, 290.

In the absence of such a legislative declaration, the presumption is that the legislature intends an act to be effective as an entirety. This is well stated in *Riccio* v *Hoboken*, 69 N. J. L. 649, 662, where the New Jersey Court

of Errors and Appeals, in an opinion delivered by Judge Pitney (afterward a Justice of this Court), after setting forth the rule as above, said:

"In seeking the legislative intent, the presumption is against any mutilation of a statute, and the courts will resort to elimination only where an unconstitutional provision is interjected into a statute otherwise valid, and is so independent and separable that its removal will leave the constitutional features and purposes of the act substantially unaffected by the process."

Compare *Illinois Central Railroad* v. *McKendree*, 203 U. S. 514, 528–530; *The Employers'. Liability Cases*, 207 U. S. 463, 501; *Butts* v. *Merchants Transportation Co.*, 230 U. S. 126, 132, *et seq.;* and see 1 Cooley's Constitutional Limitations (8th Ed.) 362, 363 and note.

The effect of the statutory declaration is to create in the place of the presumption just stated the opposite one of separability. That is to say, we begin, in the light of the declaration, with the presumption that the legislature intended the act to be divisible; and this presumption must be overcome by considerations which make evident the inseparability of its provisions or the clear probability that the invalid part being eliminated the legislature would not have been satisfied with what remains.

In the present case, it requires no extended argument to overcome the presumption and to demonstrate the indivisible character of the act under consideration. The particular parts of the act sought to be saved are found in §§ 1, 2, 3, 4 and 10. Section 1, after a preamble in respect of the importance of controlling the sale of gasoline and a declaration that such sale is impressed with a public use, creates the Division of Motors and Motor Fuels as already stated. Section 2 requires the superintendent of the division and other employees to make investigations, collect and record data concerning the manufacture and sale of gasoline, the cost of refining, freight rates, differ-

entials in wholesale and retail prices, costs and expenses
incident to the sale, methods employed in the distribution
of gasoline, and other data and information as may be ma-
terial in ascertaining and determining fair and reasonable
prices to be paid for gasoline. This information is de-
clared to be available for use in the regulation of prices
and for the inspection and information of the public. The
superintendent is directed to issue permits for the sale of
gasoline at prices fixed and determined as provided in
other parts of the statute. Section 3 makes it unlawful
for anyone to engage in the sale of gasoline without first
having obtained a permit signed by the superintendent
and approved by the Commissioner of Finance and Taxa-
tion, for which permit application must be made in ac-
cordance with and in compliance with all the requirements
of the act. Section 4 requires that the application shall
set forth whether the applicant proposes to do a whole-
sale or retail business, or both, the number and location
of the different places where he is to operate and other
like information. He must also set forth the price or
prices at which he is at the time selling gasoline, the cost
price thereof, including various items which enter into the
price, and the price at which he proposes to sell. Section
10 imposes a special permit tax of $10 per annum for each
place of sale at wholesale, and $1 per annum for each
retail service station or curb pump. The tax thus im-
posed is constituted a special maintenance fund to aid
in defraying the expenses of the Division of Motors and
Motor Fuels.

The bare recital of these details shows conclusively that
they are mere adjuncts of the price-fixing provisions of
the law or mere aids to their effective execution. The
function of the division created by § 1 is to carry these
provisions into effect, and if they be stricken down as in-
valid the existence of the division becomes without object.
The purpose of collecting the data set forth in § 2 is to

furnish information to aid in the fixing of proper prices. The requirements in § 3 that a permit must be obtained before any person can engage in the business of selling gasoline and those in § 4 that the application therefor must state the character of the business, the number and location of the places where business is to be carried on, the price or prices at which the applicant is then selling gasoline, the cost price thereof, and the price at which he proposes to sell, obviously constitute data for intelligently putting into effect the price-fixing provisions of the law or means to that end. The taxes imposed by § 10 are solely for the purpose of defraying the expenses of the Division of Motors and Motor Fuels, and since the functions of that division practically come to an end with the failure of the price-fixing features of the law, it is unreasonable to suppose that the legislature would be willing to authorize the collection of a fund for a use which no longer exists.

Appellants also insist that certain provisions in respect of rebating and discrimination contained in § 8 of the act are separable. Those provisions are that it shall be unlawful to grant any rebate, concession, or gratuity to any purchaser for the purpose of inducing the purchaser to purchase, use, or handle the gasoline of the particular dealer, and that it shall likewise be unlawful to discriminate for or against any purchaser by selling at different prices to purchasers in the same locality or in different localities. It seems clear that these provisions are mere appendants in aid of the main purpose; but, if treated as separable, they are unconstitutional restrictions upon the right of the private dealer to fix his own prices and fall within the principle of the decisions already cited. See especially *Fairmont Co.* v. *Minnesota, supra.*

This interpretation of the various provisions of the act is fortified by a requirement of the Tennessee Constitution (Art. II, § 17) that "no bill shall become a law which embraces more than one subject, that subject to be

"expressed in the title." It is fair to conclude, and there is nothing to suggest the contrary, that in the passage of the present act the legislature intended to observe this requirement and confine the provisions of the act to the one subject of price-fixing.

Accordingly, we must hold that the object of the statute under review was to accomplish the single general purpose which we have stated, and, that purpose failing for want of constitutional power to effect it, the remaining portions of the act, serving merely to facilitate or contribute to the consummation of the purpose, must likewise fall.

*Decrees affirmed.*

MR. JUSTICE HOLMES dissents.

MR. JUSTICE BRANDEIS and MR. JUSTICE STONE concur in the result.