26 C.C.P.A.(Customs)
## WISLAR v. UNITED STATES.
### Customs Appeal No. 4141.

Court of Customs and Patent Appeals.
June 6, 1938.

Edwin R. Wakefield, of New York City, for appellant.

Charles D. Lawrence, Acting Asst. Atty. Gen. (Charles J. Miville, Sp. Atty., and James F. Donnelly, Junior Atty., both of New York City, of counsel), for the United States.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from a judgment of the United States Customs Court, Second Division, overruling the protest of importer by which he seeks to recover from the United States a portion of the duties assessed and collected by the Collector of Customs at the port of Bridgeport, Connecticut, upon an importation of files, more than seven inches in length, imported from Germany in February 1936.

The files were assessed under the provision of paragraph 362, section 1, Schedule 3, of the Tariff Act of 1930, 19 U.S.C.A. § 1001, Schedule 3, par. 362, for "Files * * * seven inches in length and over, 77½ cents per dozen," and duty collected at that rate.

The importer's claim, briefly stated, is that they should have been assessed at only 45 cents per dozen, it being contended that he is entitled to such rate because of the so-called generalization clause of the Reciprocal Trade Agreement Act of June 12, 1934 (48 Stat. 943, 19 U.S.C.A. § 1351), under which a reciprocal trade agreement was entered into between the United States and Sweden, wherein that rate was fixed for files over seven inches in length. The agreement was proclaimed by the President of the United States July 8, 1935, to become effective "on and from" August 5, 1935.

The pertinent portions of the Reciprocal Trade Agreement Act read:

Sec. 350. "(a) For the purpose of expanding foreign markets for the products of the United States (as a means of assisting in the present emergency in restoring the American standard of living, in overcoming domestic unemployment and the present economic depression, in increasing the purchasing power of the American public, and in establishing and maintaining a better relationship among various branches of American agriculture, industry, mining, and commerce) by regulating the admission of foreign goods into the United States in accordance with the characteristics and needs of various branches of American production so that foreign markets will be made available to those branches of American production which require and are capable of developing such outlets by affording corresponding market opportunities for foreign products in the United States, the President, whenever he finds as a fact that any existing duties or other import restrictions of the United States or any foreign country are unduly burdening and restricting the foreign trade of the United States and that the purpose above declared will be promoted by the means hereinafter specified, is authorized from time to time—

"(1) To enter into foreign trade agreements with foreign governments or instrumentalities thereof; and

"(2) To proclaim such modifications of existing duties and other import restrictions, or such additional import restrictions, or such continuance, and for such minimum periods, of existing customs or excise treatment of any article covered by foreign trade agreements, as are required or appropriate to carry out any foreign trade agreement that the President has entered into hereunder. No proclamation shall be made increasing or decreasing by more than 50 per centum any existing rate of duty or transferring any article between the dutiable and free lists. *The proclaimed* duties and other import restrictions shall *apply to articles the growth, produce, or manufacture of all foreign countries, whether imported directly, or indirectly: Provided, That the President may suspend the application to articles the growth, produce, or manufacture of any country because of its discriminatory treatment of American commerce or because of other acts or policies which in his opinion tend to defeat the purposes set forth in this section;* and the proclaimed duties and other import restrictions shall be in effect from and after such time as is specified in the proclamation. The President may at any time terminate any such proclamation in whole or in part. [Italics ours.]"

\*    \*    \*    \*    \*    \*

The generalization clause with its limiting proviso is italicized by us in the foregoing quotation.

The pertinent part of the Reciprocal Trade Agreement between the United States and Sweden reads:

"362. Files, file blanks, rasps and floats, of whatever cut or kind, seven inches in length and over 45¢ per dozen."

The number "362," as used, indicates the number of the paragraph of the Tariff Act of 1930.

It appears that when the proclaimed duties became effective they were made applicable by the generalization clause to importations from Germany, and this continued until October 15, 1935, when, as the result of an order of the President of the United States, issued under the proviso of the generalization clause, the rates fixed in the Swedish and other trade agreements were suspended as to importations from Germany, T. D. 47898 (68 Treas.Dec. 307, 308).

The order was in the form of a letter addressed by the President to the Secretary of the Treasury, which, inter alia, stated:

"3. Because I find as a fact that the treatment of American commerce by Germany is discriminatory, I direct that the proclaimed duties shall be applied to products of Germany from the effective dates of such duties only until October 15, 1935, on which date the United States will have ceased to be bound by provisions of a treaty with Germany providing for most-favored-nation treatment in respect of customs duties."

The contentions of appellant are summarized in the brief on his behalf as follows:

"The appellant contends that the generalization clause of the trade agreement act, making 45 cents per dozen the duty rate on files seven inches and over imported from all countries, repealed the provision for such files contained in paragraph 362 of the Tariff Act of 1930 and that the collectors' assessment under paragraph 362 was invalid.

"The appellant also contends that at the time of the importation of the files in question they were subject to duty at 45 cents per dozen under the terms of the generalization clause of the Reciprocal Trade Agreement Act which made the proclaimed Swedish trade agreement duty rates applicable to all foreign countries including Germany.

"The appellant further contends that the portion of the Reciprocal Trade Agreement Act, which attempts to empower the President to suspend the generalization clause, making trade agreement rates applicable to all countries, is unconstitutional on the ground that the said provision delegates to the President the power to suspend or repeal an act of Congress fixing a rate of duty; that such power belongs solely to the Congress and cannot be delegated to the Executive and that the order of the President suspending the application of proclaimed Swedish trade agreement rates as to importations from Germany constituted an unconstitutional exercise of legislative power."

It is thus to be seen that appellant does not attack the constitutionality of the Reciprocal Trade Agreement Act as a whole. Upon the contrary, his entire case rests upon the validity of the authority conferred upon the President to negotiate trade agreements plus the validity of the generalization clause, except the proviso thereto, which proviso clearly is an integral part of that clause separated from it only

by the usual punctuation mark—a colon. Of necessity, appellant must uphold the validity of the authority granted and the validity of the affirmative portion of the generalization clause or his case falls.

The situation seems to be that appellant would both eat his cake and have his cake.

In the final analysis, as we view the controversy, the question which first must be determined is whether the provision of the act which appellant invokes to support his claim and the provision thereof which he attacks are separable, so that appellant may invoke the one and, at the same time, attack the other. If not separable, there is an end to the controversy; if separable, then other issues must be considered.

In his original brief before this court, appellant scarcely touched upon this question, notwithstanding the fact that the decision of the Customs Court rested in large part upon the view which it took of that very issue. That court in a well considered opinion referred to the well known principle of law that there may be legislative acts, parts of which may be found obnoxious to constitutional provisions while other parts are not, and that in such cases the valid parts will be upheld where they can be separated from those found to be invalid, but said, "the instant case is not one of that class."

Numerous decisions of the Supreme Court of the United States were cited in which the rule was announced and elucidated and its limitations defined. Thus, in the case of Allen v. Louisiana, 103 U.S. 80, 26 L.Ed. 318, the court said (page 83):

"It is an elementary principle that the same statute may be in part constitutional and in part unconstitutional, and that if the parts are wholly independent of each other, that which is constitutional may stand while that which is unconstitutional will be rejected. 'But,' as was said by Chief Justice Shaw, in Warren v. Mayor and Aldermen of Charlestown (2 Gray (Mass.) 84), 'if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other as to warrant a belief that the legislature intended them as a whole, and that, if all could not be carried into effect, the legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them.' The point to be determined in all such cases is whether the un-

constitutional provisions are so connected with the general scope of the law as to make it impossible, if they are stricken out, to give effect to what appears to have been the intent of the legislature."

In Connolly v. Union Sewer Pipe Company, 184 U.S. 540, 22 S.Ct. 431, 46 L.Ed. 679, it was said (page 441):

" * * * If different sections of a statute are independent of each other, that which is unconstitutional may be disregarded, and valid sections may stand and be enforced. *But if an obnoxious section is of such import that the other sections without it would cause results not contemplated or desired by the legislature, then the entire statute must be held inoperative.*" (Italics ours.)

In the Employers' Liability Cases, 207 U.S. 463, 28 S.Ct. 141, 52 L.Ed. 297, the rule was stated as follows (page 146):

" * * * Moreover, even in a case where legal provisions may be severed from those which are illegal, in order to save, the rule applies only where it is plain that Congress would have enacted the legislation with the unconstitutional provisions eliminated. All these principles are so clearly settled as not to be open to controversy. They were all, after a full review of the authorities, restated, and reapplied in a recent case. Illinois Central Railroad v. McKendree, 203 U.S. 514, 27 S.Ct. 153, 51 L.Ed. 298, and authorities there cited."

In Dorchy v. Kansas, 264 U.S. 286, 44 S.Ct. 323, 68 L.Ed. 686, it was paid (page 324):

"A statute bad in part is not necessarily void in its entirety. Provisions within the legislative power may stand if separable from the bad. Berea College v. Kentucky, 211 U.S. 45, 54-56, 29 S.Ct. 33, 53 L.Ed. 81; Carey v. South Dakota, 250 U.S. 118, 121, 39 S.Ct. 403, 63 L.Ed. 886. But a provision, *inherently unobjectionable, cannot be deemed separable unless it appears both that, standing alone, legal effect can be given to it and that the legislature intended the provision to stand, in case others included in the act and held bad should fall.*" (Italics ours.)

In Williams v. Standard Oil Co., 278 U.S. 235, 49 S.Ct. 115, 73 L.Ed. 287, 60 A.L.R. 596, appears the following (page 117):

" * * * But the general rule is that the unobjectionable part of a statute cannot be held separable unless it appears that, *standing alone, legal effect can be given to it and that the Legislature intended the provision to stand,* in case others included in the act and held bad should fall.' *The question is one of interpretation and of legislative intent,* and the legislative declaration 'provides a rule of construction which may sometimes aid in determining that intent. But it is an aid merely; not an inexorable command.' Dorchy v. Kansas, 264 U.S. 286, 290, 44 S.Ct. 323, 324 (68 L.Ed. 686)." (Italics ours.)

All the foregoing decisions were cited and quotations therefrom made in the decision of the trial court and the brief on behalf of the Government before us cites and relies upon them.

In a reply brief filed by permission of the court, counsel for appellant cites the recent decision of the Supreme Court, on March 28, 1938, in the case of Electric Bond & Share Co. et al. v. Securities & Exchange Commission et al., 303 U.S. 419, 58 S.Ct. 678, 82 L.Ed. ——, where the constitutionality of the Public Utility Holding Company Act of 1935, §§ 4(a), 5, 49 Stat. 803, 812, 813, 15 U.S.C.A. §§ 79d(a), 79e, was under attack. It appears that that act carries a provision reading:

Sec. 32. "If any provision of this title [chapter] or the application of such provision to any person or circumstances shall be held invalid, the remainder of the title [chapter] and the application of such provision to persons or circumstances other than those as to which it is held invalid shall not be affected thereby." 15 U.S.C.A. § 793—6.

In the course of its decision, the Supreme Court, after quoting section 32, supra, said (page 683):

"This provision reverses the presumption of inseparability—that the Legislature intended the act to be effective as an entirety or not at all. Congress has established the opposite presumption of divisibility. Williams v. Standard Oil Co., 278 U.S. 235, 242, 49 S.Ct. 115, 117, 73 L.Ed. 287, 60 A.L.R. 596; Utah Power & Light Co. v. Pfost, 286 U.S. 165, 184, 52 S.Ct. 548, 553, 76 L.Ed. 1038; Champlin Refining Co. v. Corporation Commission, 286 U.S. 210, 235, 52 S.Ct. 559, 565, 76 L.Ed. 1062, 86 A.L.R. 403. Congress has thus said that the statute is not an integrated whole, which as such must be sustained or held invalid. On the contrary, when validity is in question,

divisibility and not integration is the guiding principle. Invalid parts are to be excised and the remainder enforced. When we are seeking to ascertain the congressional purpose, we must give heed to this explicit declaration."

The court then held:

"(2) It is evident that the provisions of sections 4(a) and 5 [15 U.S.C.A. §§ 79d(a), 79e] are not so interwoven with the other provisions of the act that there is any inherent or practical difficulty in the separation and independent enforcement of the former while reserving all questions as to the validity of the latter. * * *"

■ Appellant's argument is that the Tariff Act of 1930 carries a provision (section 652, 19 U.S.C.A. § 1652) similar to that above quoted from the Public Utility Holding Company Act of 1935, and that, since the Reciprocal Trade Agreement Act is an amendment to the Tariff Act, it is subject to that provision. This may be conceded, but we find nothing in the decision in the Electric Bond & Share Company et al. Case, supra, which states any new rule of construction. The cases cited in that part of its decision quoted, supra, where acts of state legislatures were involved, stated the same principle. The question, after all, is one of legislative intent, and where the legislature has signified an intent that an act shall not be regarded as an integrated whole, all provisions to stand or fall together, the courts approach its construction with such intent in mind. Acting upon this principle, the Supreme Court held sections 4(a) and 5 of the Public Utility Holding Company Act of 1935, 15 U.S.C. A. §§ 79d(a), 79e, divisible from other parts of the act reserving the question of their validity for later consideration. The principle is applicable to the Tariff Act of 1930, and if any provision of that act, *divisible from other provisions,* should be found invalid, the other provisions would not be affected by such decision, but we do not regard the rule as being applicable here, for the reason that it was not, in our opinion, the intent of Congress that the proviso of the generalization clause should be divisible therefrom. The entire purpose and spirit of the Reciprocal Trade Agreement Act negatives such congressional intent.

■ We are not left in doubt as to the purpose which Congress had in mind in passing the Reciprocal Trade Agreement Act, because it is expressed in the text of the act itself as quoted, supra, and we adopt, as expressive of our view upon this point, the language of the trial court:

"Bearing in mind the purpose of the Reciprocal Trade Agreement Act, it is inconceivable that the Congress would have enacted the provision extending the lower rates in any particular trade agreement to all countries, without also enacting a proviso limiting those benefits to countries treating the United States fairly and denying the same to countries which discriminate against the commerce of the United States.

"Therefore it follows as a necessary corollary that the proviso which the plaintiff herein contends is unconstitutional is, as we have said before, an integral and inseparable part of the remainder of the Reciprocal Trade Agreement Act and cannot be declared unconstitutional at the same time the remainder of the act is held to be valid."

As to appellant's contention to the effect that the generalization clause operated, by reason of the agreement with Sweden, to repeal the 77½ cents per dozen rate on files, it seems sufficient to say that no such theory could be sustained except by holding the proviso separable from the first part of the clause and unconstitutional, while at the same time declaring the validity of the first portion. In our opinion, this may not be done, and since a holding that the entire clause, or the entire act, is unconstitutional would utterly destroy appellant's case, we are not called upon to consider that question.

It is not amiss to direct attention to the fact that the proviso if dissevered from the rest of the act would be practically meaningless.

In the decision of the trial court many authorities are cited in support of the rule, as stated by the United States District Court for the Eastern District of Virginia, in the case of Hurley v. Commission of Fisheries of Virginia, 264 F. 116, 119, that "* * * complainant cannot be heard to allege the unconstitutionality of a statute he has himself invoked and relied on." The Government likewise cites authorities on this and argues the question.

Upon this it seems proper to say that appellant does not invoke or rely upon that

part of the act which he specifically attacks, and under the construction placed upon the act by the trial court—that the part which is attacked is inseparable from that upon which he does rely and the constitutionality of which he claims, with which construction we agree—it is unnecessary to a decision of the case that the rule be explored or considered.

For the reasons indicated, the judgment of the United States Customs Court is affirmed.

Affirmed.

JACKSON, Associate Judge, took no part in the consideration or decision of this case.