## The Sperry & Hutchinson Co. et al. v. Boardman, Secretary of Revenue, et al.

*McNees, Hollinger & Nurick,* for plaintiffs.

*Edward Friedman,* Deputy Attorney General, *William H. Wood,* Assistant Deputy Attorney General, and *Charles J. Margiotti,* Attorney General, for defendants.

RICHARDS, P. J., specially presiding, September 7, 1938. —The Sperry & Hutchinson Company is engaged in the business of issuing, selling, and redeeming cash discount stamps, commonly known as "S. & H. Green Stamps". Alfred Bayley, a licensee of said company, is engaged in the sale of hardware and liquid fuels in Allegheny County, Pa. The bill of complaint, as amended, alleges that the Department of Revenue has construed the Act of June 2, 1937, P. L. 1193, as prohibiting the giving of the aforementioned stamps on sales of liquid fuels. It is contended that insofar as the act prohibits the giving of stamps on sales of liquid fuels, it is unconstitutional and void, in that:

1. It deprives plaintiffs of their natural, inherent, and indefeasible right of enjoying and defending life and liberty, of acquiring, possessing, and protecting property and reputation, and of pursuing their own happiness, in violation of article I, sec. 1, of the Constitution of Pennsylvania;

2. It impairs the obligation of the contract heretofore entered into by plaintiffs and any contracts heretofore made by the Sperry & Hutchinson Company with its other

licensees in Pennsylvania, who sell liquid fuels, in violation of article I, sec. 17, of the Constitution of Pennsylvania;

3. It is a local or special law regulating trade, in violation of article III, sec. 7, of the Constitution of Pennsylvania;

4. It violates the provisions of the fourteenth amendment to the Constitution of the United States, approved July 28, 1868, 15 Stat. at L. 708,

5. The act contains more than one subject and contains a subject which is not clearly expressed in its title, in violation of article III, sec. 3, of the Constitution of Pennsylvania.

An answer was filed denying that the act is unconstitutional and alleging that it is a valid exercise of the police power of the State. It also admits that the Secretary of Revenue has construed the act as prohibiting the giving of stamps on sales of liquid fuels. A preliminary injunction was granted and subsequently continued until the further order of the court. . . .

### Discussion

It will be observed that neither the title nor the body of the act mentions stamps. Section 3(a) requires that the price be posted. Section 3(b) prohibits sales at less than the posted price. Section 3(c) and section 7 prohibit the giving of anything of value to purchasers of liquid fuels in an attempt to evade the provisions of the act. Stamps are redeemable for cash or merchandise, and hence have value. The giving of stamps may be considered as an indirect method of reducing the posted price. Their use is prohibited by the terms of the act, whether they be given to cash customers, to those who pay by the fifteenth of the following month, or to other credit customers. Since the giving of stamps to all three classes of purchasers from a given dealer would not result in any inequality of price among them, this provision of the act must have been designed to benefit competitors. If the

act is intended to protect the public against fraud and deception, it is hard to see how the public is protected in such an instance. Apparently the price-regulating features of the act are designed to deal with competitive situations among dealers.

The evidence in the case discloses that stamps are used to insure cash sales, prompt payment, and to stimulate business. Their use is not secret but is well advertised. It is difficult to see how there is any fraud or deception in their use, under these circumstances.

It has been contended that those features of the act, which pertain to price and prohibit the giving of something of value to purchasers of liquid fuels, violate the personal and property rights of plaintiffs in contravention of article I, sec. 1, of the Constitution of Pennsylvania, and deprive plaintiffs of the equal protection of the laws, as guaranteed by the fourteenth amendment to the Constitution of the United States. It deprives the owner of the full enjoyment of his property. By forbidding the giving of anything of value, including stamps, on sales of gasoline, the act interferes with the right of the owner to sell it upon his own terms. It prevents him from exercising his own ingenuity in the development of his business by offering inducements to purchasers.

Considering the method used in issuing stamps we have a different picture presented. It is the practice and custom to give stamps on cash sales and on short credit sales, but not on long credit sales. Since the giving of stamps, in effect, reduces the price to cash and short credit purchasers, it results in an inequality of price as between them and long credit purchasers who receive no stamps. The act by prohibiting this, in effect, fixes the price to the long credit purchaser on the same basis as to the cash and short credit purchaser. While the dealer is permitted to fix the price to one class, the act fixes the price to all other classes. If this be correct, the right of the legislature so to provide is in question. Generally

speaking, the legislature has no right to fix the price at which a commodity may be sold, unless the business is affected with a public interest.

There is no evidence in the case, nor is there any fact of which the court may take judicial notice, tending to show that the gasoline business is affected with a public interest. We recognize the fact that there is always a presumption of the constitutionality of an act of the legislature. The burden is upon the contesting party to establish the contrary. In meeting this burden, testimony may be offered or the court's attention directed to matters of which judicial notice may be taken, or to matters of common knowledge. We believe it is a matter of common knowledge that, while the gasoline business is extensive, it is no more extensive than many other businesses. The court may also take judicial notice of decisions heretofore made determining whether or not the gasoline business is affected with a public interest. The United States Supreme Court has definitely held that the gasoline business is not so affected.

"It is settled by recent decisions of this Court that a state legislature is without constitutional power to fix prices at which commodities may be sold, services rendered, or property used, unless the business or property involved is 'affected with a public interest.' *Wolff Co.* v. *Industrial Court*, 262 U. S. 522; *Tyson & Brother* v. *Banton*, supra; *Fairmont Co. v. Minnesota*, 274 U. S. 1; *Ribnik* v. *McBride*, 277 U. S. 350. . . .

"In support of the act under review it is urged that gasoline is of wide spread use; that enormous quantities of it are sold . . . and that it has become necessary and indispensable in carrying on commercial and other activities within the state. But we are here concerned with the character of the business, not with its size or the extent to which the commodity is used. Gasoline is one of the ordinary commodities of trade, differing, so far as the question here is affected, in no essential respect from a great variety of other articles commonly bought and sold

by merchants and private dealers in the country. The decisions referred to above make it perfectly clear that the business of dealing in such articles, irrespective of its extent, does not come within the phrase 'affected with a public interest.' Those decisions control the present case": William, etc., et al. v. Standard Oil Company of Louisiana, 278 U. S. 235, 239, 240.

The Dauphin County court in a recent opinion has likewise held that the business of selling oil and gasoline is not affected with a public interest:

"Counsel for the defendants have predicated much upon the decision in the case of Nebbia vs. N. Y. 291 U. S. 502. That case is not applicable to the instant one. The question there was whether or not milk was affected with public interest and because it was a food of universal consumption and with influence upon the health of the consumers, it was affected with public interest. It is not so with lubricating oil or gasoline": Scudder, etc., v. Smith et al., 45 Dauph. 209, 221.

The Williams case, supra, while decided nine years ago, was cited with approval by the United States Supreme Court in 1936. See Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U. S. 183, 192.

The court recognizes the fact that modern conditions of society present new problems to be solved. We believe that the courts should, as far as legally possible, contribute to their solution by liberally construing legislation designed for this purpose. We are aware that numerous attempts have been made to regulate trade, competition, and to prevent monopoly. The rights of the individuals must give way to the police power of the State when properly exercised for the public good. But the present statute does not pretend to regulate business as a whole. Nothing in the title or body of the act refers to unfair trade practices, to the regulation of competition, to secret advantages or discounts, or to the promotion of the general public welfare. The act requires that the price be posted and allows no deviation therefrom, either

directly or indirectly. But such prohibition is not based upon any of the foregoing reasons. There is no declaration of legislative policy or adoption of any economic theory which the court may consider in passing upon the act. There is no attempt to establish that the liquid fuel business is affected with a public interest, as was milk, in the Nebbia case. The groundwork has not been laid to show how the public welfare would be promoted by the act. Police power is an elastic term adequate for many purposes, and is not necessarily restricted to cases where it has been previously applied. We cannot see, however, in view of the decisions of the United States Supreme Court, how this statute can be sustained as a proper exercise thereof.

In view of the foregoing authorities, we are impelled to conclude that insofar as the act attempts to impose restrictions on the price at which gasoline may be sold or prohibits the giving of stamps to purchasers of liquid fuels, it transgresses the rights of the individual in violation of article 1, sec. 1, of the Constitution of Pennsylvania, and the right to the equal protection of the law as guaranteed by the fourteenth amendment.

We also feel that the act attempts to make an arbitrary and unreasonable classification which deprives plaintiffs of the equal protection of the law as guaranteed by the fourteenth amendment. If there is any fraud or deception in the giving of stamps or discounts in the gasoline business, we fail to see why it is not so in all businesses. To single out this one business and make it subject to restrictive regulation is arbitrary and based upon no justifiable distinction.

An extended discussion of the question of classification is contained in the opinion of Chief Justice Taft, in Truax et al., etc., v. Corrigan et al., 257 U. S. 312, at page 337, wherein there is quoted with approval the following statement from Southern Railway Co. v. Greene, 216 U. S. 400, 417:

" 'While reasonable classification is permitted, without doing violence to the equal protection of the laws, such classification must be based upon some real and substantial distinction, bearing a reasonable and just relation to the things in respect to which such classification is imposed; and classification cannot be arbitrarily made without any substantial basis." '

In Frost, etc., v. Corporation Commission of Oklahoma et al., 278 U. S. 515, 522, and 523 (1929), the court said:

"The purpose of the clause in respect of equal protection of the laws is to rest the rights of all persons upon the same rule under similar circumstances. . . . That is to say, *mere* difference is not enough; the attempted classification 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis' ".

The act does not prescribe the posted price but permits each dealer to determine his own initial price. Neither does the act specifically require that the posted price be fixed by the gallon. Yet, as construed, it would prevent the sale of five gallons of gasoline for $1 when the posted price is 21 cents per gallon. This is because the act provides that it shall not be sold at less than the posted price. The department has construed the act as prohibiting the posting of more than one price. While it is not unlawful to price cigars at nine cents each and sell three for 25 cents, this act prohibits a similar transaction in the sale of gasoline. The vendor of gasoline is therefore classified differently than other merchants.

Plaintiff Bayley not only operates a service station where he sells gasoline, but he likewise is the proprietor of a hardware store. Prior to the passage of the act in question, he gave trading stamps at both places. Since the passage of the act he continues to give stamps lawfully in his hardware store but the act makes it unlawful to give them at the service station. If the act is constitutional, he is a law-abiding citizen when he gives

stamps at the hardware store but he is a criminal when he gives them at the service station.

We feel that to state these propositions is to establish that the classification is without any justifiable basis and is prohibited by the fourteenth amendment to the Constitution of the United States.

Article III, sec. 7, of the Pennsylvania Constitution prohibits the General Assembly from passing any local or special law regulating labor, trade, mining, or manufacturing. Dealing in gasoline is trade. A statute which applies restrictions to this single business, which differs in no essential respect from other businesses, is a special law regulating trade, in violation of the Constitution. While classification is permitted, it must be based upon a real distinction.

Chalmers v. City of Philadelphia, 250 Pa. 251, involved a statute which required the licensing of engineers who operated stationary boilers above a prescribed size in cities of the first class. The statute was held void under article III, sec. 7, as special legislation. The court said (p. 254) :

"In the absence of real and genuine distinctions, classification is not permitted. This is the settled doctrine of our cases."

The offering of inducements to purchasers is a common practice in the retail trade and is certainly not confined to dealers of gasoline. Whether the inducement be the offering of cash discount stamps or of a commodity or of a reduced price to quantity consumers, we cannot see why the public interest is any more affected in the sale of liquid fuels than in the sale of bread, clothing, or anything in common or general use. No reason has been called to our attention which would justify prohibiting the use of such inducements in the gasoline business while permitting them in all other businesses. We conclude that the act violates article III, sec. 7, of the Constitution.

From the foregoing it would appear that the act is not a valid exercise of the police powers of the State. Con-

sequently, it impairs the obligation of the contract heretofore entered into between plaintiffs, and of contracts heretofore made by the Sperry & Hutchinson Company with its other licensees in Pennsylvania, who are engaged in the sale of liquid fuels, in violation of article I, sec. 17, of the Constitution of Pennsylvania.

Finally, it is contended that the act fails to conform with article III, sec. 3, of the Constitution, in that it contains more than one subject, one of which is not clearly expressed in the title. The title indicates that the purpose of the act is to protect the public against fraud and deception and to regulate the business of selling liquid fuels. It seems to the court that this is sufficiently broad to cover those provisions of the act which require the posting of the price at which liquid fuels may be sold, which prohibit sales at less than the posted price and make it unlawful to give anything of value in an attempt to evade the provisions of the act. These are germane to the prevention of fraud and deception and to the regulation of the business of selling liquid fuels. The title of an act need not be an index of its contents, and so long as a title reasonably gives notice to the public of the scope of the act, the constitutional requirement has been met. We cannot find, therefore, that the act is unconstitutional under article III, sec. 3. . . .

### Decree nisi

And now, September 7, 1938, upon due consideration, it is hereby ordered, adjudged, and decreed that the above defendants and their successors in office be and are hereby enjoined and restrained from enforcing those sections of the aforesaid act which prohibit the giving of S. & H. cash discount stamps on sales of liquid fuels.

The prothonotary is directed to enter this decree nisi on his records and to notify the parties to these proceedings or their counsel. If no exceptions are filed within 10 days thereafter, a final decree will be entered, permanently restraining defendants as above provided.