Harry PTASYNSKI, John Partridge, Berton W. Avery, Goldie Avery, Frederick S. Johnson, and Calvin Petroleum Corporation, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Independent Petroleum Association of America, et al., Intervenors.

John PARTRIDGE, Plaintiff,

v.

UNITED STATES of America, Defendant.

Nos. C80–302, C82–050.

United States District Court, D. Wyoming.

Nov. 4, 1982.

Robert F. Nagel and Stephen Williams, University of Colorado, School of Law, Boulder, Colo., William H. Brown and Mike Sullivan, Brown, Drew, Apostolos, Massey & Sullivan, Casper, Wyo., for taxpayer plaintiffs and Ass'n intervenors.

Harold Scoggins, Washington, D.C., for intervenor Independent Petroleum Ass'n of America.

Mark White, Atty. Gen. and Stuart Fryer, Asst. Atty. Gen., Austin, Tex., for intervenor State of Texas.

George J. Domas, Liskow & Lewis, New Orleans, La., for intervenor State of Louisiana.

Gale Norton, Mountain States Legal Foundation, Denver, Colo., co-counsel for intervenors State of Tex. and State of La.

Richard L. Krause, Park Ridge, Ill., for amicus curiae American Farm Bureau Federation.

Brent Kunz, Hathaway, Speight & Kunz, Cheyenne, Wyo., for amicus curiae American Farm Bureau Federation and amicus curiae Wyoming Farm Bureau Federation.

Robert Livingston and Robert L. Baker, Dept. of Justice, Washington, D.C., for defendant United States of America.

## MEMORANDUM OPINION

KERR, District Judge.

The question for consideration in this case is the constitutionality of the Windfall Profits Tax on Domestic Crude Oil. The tax is imposed pursuant to the Crude Oil Windfall Profits Tax Act of 1980, 26 U.S.C. § 4986 et seq. (Act), one provision of which, namely the Alaska oil exemption, 26 U.S.C. § 4994(e) provides the focus of this challenge. This Court has jurisdiction in accordance with 28 U.S.C. § 1346(a)(1) and 28 U.S.C. § 1331(a).

The plaintiffs are taxpayers, made up of independent domestic oil producers and/or royalty owners. The original filing also included the Independent Petroleum Association of America and more than thirty other associations of oil producers and royalty owners as plaintiffs. Though the association plaintiffs were dismissed pursuant to defendant's motion, they were allowed to remain in the action as permissive intervenors. Motions to intervene filed by the states of Texas and Louisiana were also granted. The American Farm Bureau Association and the Wyoming Farm Bureau Association were permitted to file an amicus curiae brief.

The original complaint has been supplemented and amended several times. Presently pending before the Court is the Second Amended and Supplemental Complaint, filed June 29, 1981, to which the defendant has responded.

A subsequent suit filed by plaintiff Partridge (C82–050) for a refund of windfall profit taxes paid in 1980 has been consolidated with the original action.

Plaintiffs, intervenors and defendant have all filed motions for summary judgment. The issue involved is one of law and there are no facts in dispute—the action is appropriate for disposition by summary judgment.

### The Windfall Profit Tax

The Act imposes an excise tax on the oil producer for the removal of domestic crude oil. The profit subject to tax is the difference between the removal price and the statutory adjusted base price (with severance and inflation adjustments). The rate of tax is determined based upon the "tier" into which the type of oil and the type of producer is categorized. A more complete picture of the categorization is presented below.

| Category<br>See § 4991 | Base Price<br>See § 4989 | Rate of Tax<br>See § 4987 |
|---|---|---|
| Exempt: | Not Applicable | No Tax |
| 1. Oil owned by Governments or charities | | |
| 2. Indian oil | | |
| 3. Certain Alaska oil | | |
| 4. "Front-end" oil, meaning oil the proceeds of which are used, subject to complex restrictions, to finance tertiary recovery projects. | | |
| Tier 3: | | |
| 1. Newly discovered oil | $16.55, with | 30% |
| 2. Heavy oil | various | |
| 3. Incremental tertiary oil | adjustments | |
| Tier 2: | | |
| 1. Stripper oil | $15.20, with | Independents–30% |
| 2. National Petroleum Reserve Oil | various | Others–60% |
| Tier 1: | | |
| All other oil | Approximately the May 1979 ceiling price for "upper tier" oil under the price control system, or about $13 | Independents–50%<br>Others–70% |

Of particular import to the question of constitutionality is the exemption of certain Alaska oil. Any crude oil (other than that produced from the Sadlerochit Reservoir) which is produced from a well north of the Arctic Circle, or from a well north of the Alaska—Aleutian Range divide which is 75 miles or more from the Trans-Alaska Pipeline System is exempt from the tax. This exemption involves certain oil found only in Alaska and thus is termed "exempt Alaskan oil."

### The Issues

A logical presentation of the issues in this case requires that consideration first be given to the jurisdictional issue of ripeness. Defendant's allegation is that the entire issue is not ripe, at least as to these plaintiffs, because there was no oil produced to which the Alaska oil exemption could be applied during the period of time for which the refund is requested. Therefore, defendant reasons, the tax was uniformly applied during the time period involved in the suit.

Upon a finding by this Court that the issue is ripe for judicial determination, plaintiffs challenge the constitutionality of the Act on two separate theories. One theory is that the existence of the Alaska exemption makes the Act violative of the uniformity clause of the United States Constitution—art. 1, § 8, cl. 1. If the Alaska oil exemption violates uniformity, plaintiffs argue, the remedy is not simply to sever the Alaska exemption, but to invalidate the entire Act.

Plaintiffs' second constitutional challenge involves two related theories based on the fifth amendment to the United States Constitution. Plaintiffs allege that the Act as a whole is unconstitutional because one, it involves confiscation or "taking" of property requiring just compensation, and two, the tax is not rationally related to the goals which the Act seeks to achieve.

### Ripeness

■ The refund period involved in this suit is 1980. No oil was produced in 1980 which was subject to the Alaska exemption. On the basis of these facts, defendant alleges that the tax was uniformly applied in 1980 and thus no claim for relief exists.

The absence of production in the exempt portion of Alaska during 1980 is not relevant to this Court's determination regarding the constitutionality of the Act. There is no allegation by plaintiffs that the Act is unconstitutional simply in its application, i.e. only when production in the Alaska exemption area begins and uniformity is actually in question. The contention is that the Act is unconstitutional on its face and thus, actual production in Alaska aside, plaintiffs have been and are being subjected to an invalid tax.

A matter is not ripe for adjudication when the question involved "emphasizes a *prospective* examination of the controversy which indicates that future events may affect its structure in ways that determine its *present* justiciability . . . ." Tribe, American Constitutional Law, § 3–13 at 61 (1978). The only future event involved in this controversy is the actual exemption of Alaska oil. The lack of uniformity, in the Act itself, exists now, and has existed since the Act was passed. This alone is sufficient for a finding that the controversy before the Court is now appropriate for adjudication. However, further support for this decision can be found from the Supreme Court of the United States. Even if the question of uniformity were not actually at issue until the Alaska exemption had been effectuated, plaintiffs were subjected to a tax which was sure to become invalid. Their interest was substantial and the threatened unconstitutionality was certain to occur. "If the injury is certainly impending, that is enough." *Carter v. Carter Coal Co.,* 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1936); *see also Pennsylvania v. West Virginia,* 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117 (1923); *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). It shall be noted here, that since 1980 the Alaska exemptions have been applied, and no purpose would be served by forcing the plaintiffs to refile a challenge to this Act.

The issue is disposed of by this Court's finding that the challenge to the constitutionality of the Act is ripe for adjudication, and shall be decided on its merits.

### Uniformity

Article 1, § 8, cl. 1 of the United States Constitution provides:

> The Congress shall have Power to lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Im-

posts and Excises *shall be uniform throughout the United States.* (Emphasis added)

The power of Congress to tax is very extensive. It has been termed "necessarily unlimited" *Austin v. The Aldermen,* 7 Wall. 694, 19 L.Ed. 224 (1868), "unfettered" *Pacific Insurance Co. v. Soule,* 7 Wall. 433, 19 L.Ed. 95 (1868), and without judicial remedy if it is merely "unwise or injurious." *Champion v. Ames,* 188 U.S. 321, 23 S.Ct. 321, 47 L.Ed. 492 (1903). Of course, constitutional guidelines must be followed, but within the framework of that limitation Congress "is supreme in its action." *Pacific Insurance Co. v. Soule, supra* 7 Wall. at 443; *McCray v. United States,* 195 U.S. 27, 57, 24 S.Ct. 769, 777, 49 L.Ed. 78 (1904). The Constitution itself places only one qualification on indirect taxes—the requirement that they be uniform. *License Tax Cases,* 5 Wall. 462, 471, 18 L.Ed. 497 (1866); *McCray v. United States, supra* 195 U.S. at 56, 24 S.Ct. at 776; The Constitution of the United States of America, Analysis and Interpretation, S.Doc. No. 92–82, 92d Cong., 2d Sess. 129 (1973).

This uniformity requirement applies to all excise or indirect taxes, and has been held to be one of geographic uniformity only. *Knowlton v. Moore,* 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969 (1900). "The classic definition of geographic uniformity is that given in the *Head Money Cases,* 112 U.S. 580, 594, 5 S.Ct. 247, 251, 28 L.Ed. 798 (1884).... 'The tax is uniform when it operates with the same force and effect in every place where the subject of it is found.'" Tribe, *supra* at § 5–11, p. 252, n. 3.

■ To clarify even further, uniformity seeks to prevent discrimination among the states. That is not to say that some states will not experience a greater burden of excise tax than others. By nature, the subjects of excise tax are not evenly distributed in every state. Some states have large amounts of the subject being taxed, some have smaller amounts, and some states have none at all. An indirect tax on articles or actions so diverse in their existence is valid, so long as in each state where the subject of the tax *is* found, the tax is applied, and applied with equal force. *Knowlton v. Moore, supra.*

■ In this case, the production and removal of domestic crude oil is the subject of the tax. Crude oil is not found in each of the fifty United States, and even in those states where it is found, it varies in quantity and availability. Production and removal do not take place in the same manner or at the same rate in every state where crude oil is known to be. Some states and their citizens will pay large amounts of windfall profits tax. Some states will pay no tax at all. However, these distinctions do not make the tax on production and removal of crude oil invalid for lack of uniformity. The Constitution only requires that in each state where crude oil is found, the production and removal of that crude oil be subject to the tax and taxed at the same rate. The windfall profits tax ignores this requirement. The Act, on its face, says that one state, Alaska, is not subject to the same tax, at the same rate as all the other states. This is a clear violation of the constitutional requirement of uniformity.

Defendant's argument that a rational justification for the exemption can validate its existence is not without some merit. Legitimate exemptions from tax can èxist, but the exemption must be one which is not constitutionally forbidden. The Constitution has unequivocally set forth a limitation on indirect taxation—uniformity—which has been narrowly, but precisely defined by the judiciary. Distinctions based on geography are simply not allowed.

### Separability

■ The finding that the "exempt Alaskan oil" provision of the Act is unconstitutional for lack of uniformity does not necessarily dispose of the issue of the constitutionality of the Act itself. It must further be ascertained whether the invalid provision can be stricken from the Act, leaving the valid portion to be enforced separately, or whether the entire Act must fall due to the

unconstitutionality of the Alaska exemption.

While several factors must be considered to reach the proper decision in each case, the test is said to be one of legislative intent. *Carter v. Carter Coal, supra;* 2 Sutherland, Statutory Construction, § 44.-03, p. 338 (4th ed.1972). Unfortunately, even with an opportunity to carefully consider legislative history, it is not always a simple task to determine with much accuracy the lawmakers' intent. Both plaintiffs and defendant have cited examples of individual statements and commentary. The most articulate of individual observations, while providing a certain amount of insight, is not necessarily indicative of the entire Congressional spirit. *American Smelting & R. Co. v. Occupational S. & H.R. Comm.,* 501 F.2d 504, 509 (8th Cir.1974). At times, separability clauses have been used by lawmakers to signify intent or by courts as an aid in interpretation. However, it seems clear that the presence or absence of such a provision is in no way conclusive or binding on the ultimate decision of severing or requiring the entire Act to fall. *Dorchy v. Kansas,* 264 U.S. 286, 44 S.Ct. 323, 68 L.Ed. 686 (1924); *Williams v. Standard Oil Co. of Louisiana,* 278 U.S. 235, 49 S.Ct. 115, 73 L.Ed. 287 (1929); Sutherland, *supra* at § 44.08, p. 349. The Internal Revenue Code, of which the windfall profits tax is a part, contains a general separability clause. 26 U.S.C. § 7852(a) provides:

> If any provision of this title, or the application thereof to any person or circumstances, is held invalid, the remainder of the title, and the application of such provision to other persons or circumstances, shall not be affected thereby.

As explicit as this provision appears, the interpretations set forth by both sides are valid. As defendant argues, it may be read to permit the invalidation of the exemption while leaving the remainder of the Act enforceable. Or as plaintiffs argue, the entire Act could be found invalid, and this provision would allow it to be stricken from the Internal Revenue Code without affecting the remainder of the title. Consequently,

this Court merely notes that a separability clause does exist in the Internal Revenue Code, but that its aid in clarification of this matter is minimal and a holding can be reached without reliance on or disaffirmance of the clause. More deferential consideration would be given were a specific separability clause written into the Act itself.

With or without consideration of the separability clause, we still face the task of interpreting legislative intent. A further clue to the purpose intended by lawmakers is provided by judicial analysis. "Since no precise ... standard may be set out ... a rule of reasonableness is invoked." Sutherland, *supra* at § 44.03, p. 338 and cases cited therein; the test is whether or not the legislation would have passed with the invalid features removed. *Carter v. Carter Coal Co., supra;* legislation is invalid in its entirety on a clear showing that "the invalid part being eliminated the legislature would not have been satisfied with what remains." *Williams v. Standard Oil Co., supra* 278 U.S. at 242, 49 S.Ct. at 117. Conceding that the legislative history and spirit remains somewhat of an enigma in this case, it is however clear that the Alaska exemption was the result of negotiations and compromise, and that the Act as it exists today would not have been passed without the invalid Alaska provision. H.R. Rep. No. 304, 96th Cong., 2d Sess. 30, *reprinted in* 1980 U.S.Code Cong. & Ad.News 410, 587, 612–13; S.Rep. No. 394, 96th Cong., 2d Sess. 35–37, *reprinted in* 1980 U.S.Code Cong. & Ad.News 410, 444–446; 125 Cong.Rec. S 18564 (daily ed.; Amendment No. 877 as modified), adopted at S 18567 (December 14, 1979); 125 Cong.Rec. S 18564, 18566, (daily ed. December 14, 1979); 125 Cong.Rec. S 18565 (daily ed. December 14, 1979).

"Some courts uphold the valid portion of a statute when the invalid portion can be shown not to have been the inducement for passage of the act. Conversely, where the invalid portion was the principal inducement for the passage of the statute, the whole statute must fail. (footnotes omit-

ted)" Sutherland, *supra* at § 44.06, p. 346. The circumstances surrounding the windfall profits tax legislation give a strong indication that the entire Act must be declared void as a result of the unconstitutional Alaska exemption. Although "principal inducement" may be attributing more weight to the Alaska exemption than it deserves, the exemption does carry sufficient import to justify a finding that its invalidation renders the entire Act void.

This Court finds yet a further basis upon which the entire Act must be struck down. Were the Alaskan exemption simply invalidated, and the balance of the Act left independently enforceable, the result would be extension of the tax to all crude oil produced in Alaska, subject of course to the categorization of the various tiers. Action of that nature amounts to judicial legislation which is not permissible and should be avoided by courts. Under the "guise of interpretation" courts cannot alter legislative intent or usurp legislative authority, 73 Am.Jur.2d, *Statutes*, § 197, p. 394 (1974) and cases cited therein; Sutherland, *supra* at § 44.13, p. 359, and this Court will not infringe on the powers and duties of Congress. Accordingly, due to the unconstitutionality of the Alaska exemption, the Act in its entirety must fall.

### The Fifth Amendment

■ Having decided that the Windfall Profits Tax Act is unconstitutional because it violates uniformity, the Court need not rule on plaintiffs' second constitutional challenge, that based on the fifth amendment. However, the Court will note that such a challenge is without merit. The latitude of congressional power to tax has been previously noted, and within that power is the authority to select subjects of taxation. *Flint v. Stone Tracy Co.,* 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389 (1911); *McCray v. United States,* 195 U.S. 27, 24 S.Ct. 769, 49 L.Ed. 78 (1904). That a tax is too high, unwise, oppressive, burdensome, restrictive or even destructive does not provide a basis upon which the courts can void a tax invoked by Congress. *McCray v.*

*United States, supra; Sonzinsky v. United States,* 300 U.S. 506, 57 S.Ct. 554, 81 L.Ed. 772 (1937). A tax by its very nature is destructive and burdensome.

■ As forceful and protective as the fifth amendment is, it does not act as a limitation on congressional power to tax granted by the United States Constitution. Even a seemingly arbitrary tax does not amount to confiscation or taking violative of due process. *Brushaber v. Union Pacific Railroad,* 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493 (1916); *McCray v. United States, supra.* The goal of raising revenue is a sufficient one to justify tax. *McCray v. United States, supra.* Surely no one is attempting to argue that the windfall profits tax is not a revenue raising measure. The fifth amendment challenge to the windfall profits tax is unfounded, and without merit, but unnecessary for a determination in this case.

### Conclusion

For the above-stated reasons, this Court finds that the Crude Oil Windfall Profits Tax Act of 1980, 26 U.S.C. § 4986 et seq. violates art. 1, § 8, cl. 1 of the United States Constitution. The invalid portion of the Act cannot be severed, and thus the entire Act must fall.

Summary judgment will be entered in accordance with this Memorandum Opinion.

### JUDGMENT

The above-entitled matter coming on regularly for hearing before the Court, taxpayer plaintiffs, intervenors and two amicus curiae appearing by and through their attorneys, Robert F. Nagel, Stephen Williams, William H. Brown, Mike Sullivan, Harold Scoggins, Mark White, Stuart Fryer, George J. Domas, Gale Norton, Richard L. Krause and Brent Kunz, and defendant appearing by and through its attorneys, Robert Livingston and Robert L. Baker, and the Court having heard the evidence and having taken said matter under advisement, and having carefully considered the pleadings, testimony and exhibits relevant and material to the matters in dispute, and the

memoranda submitted by counsel in support of their respective theories of the case, and having prepared and filed herein its Memorandum Opinion, finding generally in favor of the plaintiffs and against the defendant, and being fully advised in the premises;

NOW, THEREFORE, IT IS

ORDERED that plaintiffs recover of and from defendant the amount of windfall profit taxes paid by plaintiffs in March of 1980 for C80–302, and from March through December 1980 in C82–050, in such sum as may be determined by plaintiffs and defendant with interest as provided by law; it is

FURTHER ORDERED that all proceedings in this matter be stayed until a higher court has had occasion to pass upon the correctness of the trial court's decision.